Melissa S. Hayward
  Texas Bar No. 24044908
  MHayward@FranklinHayward.com
Julian Vasek
  Texas Bar No. 24070790
  JVasek@FranklinHayward.com
**FRANKLIN HAYWARD LLP**
10501 North Central Expy, Suite 106
Dallas, Texas 75231
(972) 755-7100 (*tel.*)
(972) 755-7110 (*facsimile*)

*Counsel for the Debtors*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **BAILEY TOOL & MANUFACTURING** | § | **Case No. 16-30503-bjh11** |
| **COMPANY, et al.** | § | **Chapter 11** |
| | § | **(Jointly Administered)** |
| Debtors. | § | |
| | § | |
| **BAILEY TOOL & MANUFACTURING** | § | |
| **COMPANY, HUNT HINGES, INC., and** | § | |
| **CAFARELLI METALS, INC.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | **Adv. No. _____** |
| | § | |
| **REPUBLIC BUSINESS CREDIT, LLC,** | § | |
| | § | |
| Defendant. | § | |

## DEBTORS' ORIGINAL COMPLAINT AND APPLICATION FOR
## A TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION

TO THE HONORABLE BARBARA J. HOUSER,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

      NOW COME Bailey Tool & Manufacturing Company ("<u>Bailey</u>"), Hunt Hinges, Inc.

("<u>Hunt</u>"), and Cafarelli Metals, Inc. ("<u>Cafarelli</u>" and with Bailey and Hunt, the "<u>Debtors</u>"), and

file this *Original Complaint and Application for a Temporary Restraining Order and Permanent Injunction* against Republic Business Credit, LLC ("Republic"), in support of which they would respectfully show as follows:

## I.    JURISDICTION AND VENUE

1.    The Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334. This adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), (K), and (O).

2.    Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

3.    To the extent the Court determines that any of the claims asserted herein are not core, the Debtors hereby expressly consent to the entry of final orders and judgments by the Bankruptcy Court.

## II.    PARTIES

4.    Bailey is a Texas corporation and a debtor and debtor-in-possession in the above-captioned, jointly administered bankruptcy cases.

5.    Hunt is a Texas corporation and a debtor and debtor-in-possession in the above-captioned, jointly administered bankruptcy cases.

6.    Cafarelli is a Texas corporation and a debtor and debtor-in-possession in the above-captioned, jointly administered bankruptcy cases.

7.    Republic is a Louisiana limited liability company that is authorized to do, and that actually does, business in Texas.  Republic may be served under Fed. R. Bankr. P. 7004(b)(3) by mailing a copy of this Complaint to its registered agent, National Corporate Research, Ltd., 206 E. 9th Street, Suite 1300, Austin, TX 78701.

### III.   FACTS

8.      On February 1, 2016 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code, commencing its respective

bankruptcy case.

9.      The Debtors continue to operate and manage their businesses as "debtors in

possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10.     No trustee or examiner has been appointed in the chapter 11 cases pursuant to

section 1104 of the Bankruptcy Code.

11.     Generally speaking, the Debtors are in the business of metal fabrication.

12.     The Debtors are based in Lancaster, Texas, where they operate out of a 105,000

square foot facility located at 600 W. Beltline Rd., Lancaster, TX 75146 (the "Lancaster

Property"), which houses engineering, heavy forming, machining, welding, assembly and

shipping operations.

13.     Bailey operates a steel stamping facility and possesses fully integrated, state-of-

the-art tooling production capabilities.

14.     Bailey's business focuses primarily on manufacturing stamped and fabricated

metal components used in the automotive, truck, defense, munitions, industrial, and

transportation industries, as well as machine and tool and die building.

15.     Hunt is a wholly owned subsidiary of Bailey that manufactures continuous hinges

in stainless steel, aluminum, steel, galvannealed steel, and galvanized steel.

16.     Hunt can modify and customize any of its continuous steel hinges to suit any

purpose, and Hunt collaborates with Bailey to offer customers a versatile stamping facility and a

state-of-the-art tool and die facility, which allows Hunt to offer complete and quick turnaround on custom stamping products to complement its hinges.

17.    Cafarelli is also a wholly owned subsidiary of Bailey that provides metal slitting services, which is a shearing operation that cuts a large roll of metal into narrower rolls.

18.    Cafarelli offers slitting to precision widths and can slit coiled metals of various widths and even make use of old material by slitting unused coils, thereby turning them into productive stock.

19.    Historically, Bailey's core customer group has been Tier One and Tier Two automotive and truck suppliers that supply OEM and aftermarket parts in the United States.

20.    However, in light of the economic downturn that particularly struck the automotive industry, Bailey began to diversify its customer base beyond the automotive industry into the oil and gas, defense and transportation, and munitions equipment and production industries.

21.    Bailey accordingly began a sales and marketing push to provide stamped and fabricated metal components to the government contracting and oil & gas markets, and Bailey had some initial success winning bids for government contracting projects, most of which were defense munitions metal-stamped and fabricated components.

22.    Unfortunately, however, Bailey's attempts to diversify required Bailey to spend significant amounts on research and development, while at the same time certain of Bailey's automotive customers lost their contracts with the end-user automotive companies.

23.    This caused a significant loss to both Bailey's cash flow and profitability, and it caused Bailey's primary secured lender, Comerica Bank, to terminate Bailey's line of credit at the end of 2014.

24.     Comerica was the Debtors' primary pre-petition secured creditor, and Comerica's liens extend to substantially all of the Debtors' assets.

25.     In the beginning of 2015, after losing their Comerica line of credit, the Debtors entered into a purported factoring and inventory financing arrangement with Republic using the Debtors' accounts receivable and inventory to finance their working capital needs.

26.     At the same time, Comerica entered into a subordination agreement with Republic in which Comerica agreed to subordinate its liens on the Debtors' accounts receivable and inventory to Republic.

27.     With respect to the factoring aspect of the arrangement with Republic, the Debtors would allegedly assign accounts receivable to Republic by submitting a schedule of such accounts to Republic via Republic's online portal, and then Republic would advance funds based on the amount of those accounts.

28.     After about three months, the relationship between Republic and the Debtors soured when Republic began to claim that the Debtors were overextended on their inventory line of credit.

29.     Republic also made bad-faith allegations at the time that the Debtors' accounts receivable were uncollectable and ineligible for factoring.

30.     Such allegations were clearly made in bad faith because such accounts were clearly collectable and were in fact collected by Republic.

31.     Upon making such bad-faith allegations, Republic began to wrongfully reduce funding to the Debtors, thereby constricting operations and cash flow and making it impossible for the Debtors to buy materials and deliver customers' orders on time.

32.     Later, the relationship between Republic and the Debtors turned hostile, and Republic began to engage in a concerted effort to take control of the Debtors' business, including by, inter alia, controlling the Debtors' accounts payable and vendor payments, refusing to make the Debtors' payroll, installing armed security guards and cameras at the Debtors' facility, fabricating alleged "thefts" of materials and sending police to the Debtors' facility in an effort to manipulate and intimidate the Debtors' employees and management, and dealing directly with the Debtors' customers and vendors.

33.     When dealing directly with the Debtors' vendors, Republic would fraudulently promise to issue payment on a COD basis for materials and then later refuse to pay when the material was delivered.

34.     Republic even coerced the Debtors' principal into granting Republic a lien on his homestead and wrongfully collected amounts from the proceeds of the sale of the homestead in direct violation of the Texas Constitution and other applicable law.

35.     Republic's wrongful actions caused and continue to cause the Debtors significant financial harm, damaged the Debtors' reputation with their vendors and customers, and even forced the Debtors' to shut down operations on several occasions.

36.     At some point in August 2015, Republic stopped advancing money to the Debtors altogether.

37.     In late September 2015, the Debtors had no choice but to seek funding from one of their customers, and that customer provided funding to the Debtors up to the Petition Date by paying in advance for its orders.

38.    In late September and early October, the Debtors and Republic engaged in settlement discussions in an effort to resolve the outstanding issues between them.  Such settlement discussions ultimately fell apart on October 2, 2014.

39.    Notwithstanding, on or about October 2, 2015, unbeknownst to the Debtors at the time, Republic applied a $75,000 termination fee against money Republic had collected from the Debtors' accounts receivable.

40.    The Debtors purportedly assigned the last set of invoices to Republic on November 5, 2015, by submitting a schedule of such invoice via Republic's online portal.

41.    Republic never advanced funds with respect to any of the invoices purportedly assigned between the cessation of funding in August 2015 and the last submission of invoices on November 5, 2015.

42.    When Republic wrongfully ceased funding, it put incredible strain on the Debtors' business operations and jeopardized their ability to continue operating, including the Debtors' ability to pay their employees, who number in excess of forty.

43.    Based on information available from Republic's online portal, on the other hand, Republic has collected the November 5 invoices and other allegedly uncollectable invoices in full, despite never advancing funds in exchange for the purported assignment of such invoices.

44.    Indeed, by November 20, 2015, Republic had collected all accounts receivable that Republic previously and in bad faith deemed uncollectable, which satisfied the outstanding balance owed to Republic in full.

45.    Nevertheless, Republic continued to wrongfully collect the Debtors' accounts receivable and refused to turn over such funds.

46.     Upon information and belief, Republic even collected accounts receivable that the Debtors never submitted to Republic for factoring.

47.     Upon information and belief, Republic is, at present, wrongfully holding no less than $300,000 of the Debtors' cash (the "Funds"), notwithstanding that the credit facility it provided has been paid in full since mid-November 2015, notwithstanding that many of the accounts receivable that Republic has since collected were never purportedly assigned to Republic in the first place, notwithstanding that Republic never provided funding on any of those invoices, and notwithstanding the fact that Republic paid itself a termination fee from the Debtors' account more than four months ago.

48.     On December 3, 2015, the Debtors' counsel sent a letter to Republic's counsel expressly terminating the factoring agreement—to the extent that it had not already been terminated—and demanding turnover of the wrongfully withheld funds.

49.     Republic responded by refusing to turn over the Funds until the Debtors executed a broad, general release absolving Republic of liability for its wrongful actions.

50.     Republic's actions ultimately forced the Debtors' financial distress to escalate past the breaking point, and the Debtors were forced to seek bankruptcy protection to protect their valuable assets and business and to restructure and reorganize their financial affairs.

51.     The day after the Petition Date, February 2, 2016, the Debtors' counsel again sent a letter to Republic's counsel demanding turnover of the wrongfully withheld funds.

52.     Despite repeated demands, however, Republic has expressly refused to turn over the Debtors' cash in an attempt to extort a general release from the Debtors.

53.    On February 10, 2016, ten days into the Debtors' bankruptcy case, S. Joseph Brown ("Brown"), counsel for Republic, sent an email to Sheryl Toby, counsel for Trelleborg Automotive USA, Inc. ("Trelleborg"), one of the Debtors' customers.[1]

54.    Trelleborg has been withholding the funds that it owes the Debtors for products shipped to Trelleborg for the past several months due to the ongoing issues between Republic and the Debtors and Republic's wrongful claim that it was entitled to those funds (even after the credit facility had been paid in full).

55.    Upon information and belief, Sheryl Toby had called Republic's counsel that same day to discuss the funds that Trelleborg had been holding, which total more than $100,000, and to notify Republic of Trelleborg's desire to remit such funds to the Debtors.

56.    In the email, Brown, on behalf of Republic, demanded that Trelleborg not pay the Debtors, but instead pay Republic, and asserted a right to setoff, among other things.

57.    There is absolutely no question that Republic never advanced funds to purchase at least some of the accounts it is seeking to collect post-petition from Trelleborg, and with respect to any Trelleborg invoices that Republic did advance funds on, such advances have since been paid in full through Republic's collection of other accounts receivable.

58.    There is likewise no question that Brown had notice of the Debtors' bankruptcy cases when he sent this email, as the email specifically references the bankruptcies.

59.    Upon information and belief, Republic has collected and continues to collect the Debtors' accounts receivable for other of the Debtors' customers in direct violation of the automatic stay.

---

[1]    A copy of the email is attached hereto as Exhibit 1.

60.     This continued theft of the Debtors' property—indeed, property of the Debtors' estates—places considerable strain on the Debtors' ability to operate in chapter 11, and it significantly impedes their ability to seek, much less obtain, the fresh start the Congress intended.

61.     Indeed, between the funds that Trelleborg is withholding due to Republic's assertion of an interest in such funds and the Funds that Republic has wrongfully collected and refused to turn over to the Debtors since its credit facility was paid, the Debtors have been deprived of no less than $400,000 of their property.

62.     Had the Debtors received the funds that Republic continues to wrongfully exercise control over, the Debtors may not have had to seek bankruptcy protection in the first place.

## IV.     CAUSES OF ACTION

**Count 1:**     **Violation of the Automatic Stay / Contempt of Court.**

63.     The Debtors incorporate the foregoing paragraphs as if fully set forth here.

64.     One violates the automatic stay by undertaking "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[2]

65.     One also violates the automatic stay by undertaking "any act to create, perfect, or enforce any lien against property of the estate."[3]

66.     One also violates the automatic stay by undertaking "any act collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code.]"[4]

---

[2]     11 U.S.C. § 362(a)(3).

[3]     11 U.S.C. § 362(a)(4).

67.     One also violates the automatic stay by undertaking "the setoff of any debt owing to the debtor that arose before the commencement of the case … against any claim against the debtor."[5]

68.     One also violates the automatic stay when one exercises control over property to which the debtor only has an arguable claim of right.[6]

69.     Willful violations of the automatic stay are punishable by the Court's inherent contempt power and its authority under section 105(a) of the Bankruptcy Code.

70.     Republic violated the automatic stay by demanding post-petition that Trelleborg not pay the Debtors but pay Republic instead, even if the Debtors' right to collect the accounts receivable in question is in dispute.

71.     Republic has also violated the automatic stay to the extent it has exercised any purported pre-petition right to setoff after the Petition Date.

72.     Republic has also violated the automatic stay by collecting the Debtors' accounts receivable after the Petition Date.

73.     Accordingly, the Debtors request that the Court award them compensatory and exemplary damages in an amount to be determined at trial.

74.     The Debtors also request that the Court enjoin Republic from further violations of the automatic stay.

**Count 2:      Turnover of Property of the Estate.**

75.     The Debtors incorporate the foregoing paragraphs as if fully set forth here.

---

[4]     11 U.S.C. § 362(a)(6).

[5]     11 U.S.C. § 362(a)(7).

[6]     *See Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298 (5th Cir. 2005) ("Here, we face the question whether the creditor violates the stay if, without permission of the bankruptcy court, he forecloses on an asset to which the debtor has only an arguable claim of right …. We answer in the affirmative ….").

76.    Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case" "wherever located and by whomever held."[7]

77.    Property of the estate also includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate."[8]

78.    The Funds are property of the estate.

79.    Any entity in possession, custody, or control of property of the estate must deliver and account for such property to the Debtors.[9]

80.    Accordingly, the Debtors request that the Court enter an order compelling Republic to turn over the Funds, along with an accounting, to the Debtors immediately.

**Count 3:    Declaratory Relief**

81.    The Debtors incorporate the foregoing paragraphs as if fully set forth here.

82.    The Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[10]

83.    "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."[11]

84.    Accordingly, the Debtors request that the Court declare as follows:

    a.    The alleged contracts between the Debtors and Republic are unenforceable due to lack of consideration.

    b.    The alleged contracts between the Debtors and Republic are unenforceable due to failure of consideration.

---

[7]    11 U.S.C. § 541(a)(1)

[8]    11 U.S.C. § 541(a)(6).

[9]    11 U.S.C. §§ 542(a), 543(b), and 1107(a).

[10]    28 U.S.C. § 2201.

[11]    *Id.*

    c.   The alleged contracts between the Debtors and Republic are unenforceable due to economic duress.

    d.   The alleged contracts between the Debtors and Republic are unenforceable due to business compulsion.

    e.   The alleged contracts between the Debtors and Republic are unenforceable due to unconscionability.

    f.   The alleged contracts between the Debtors and Republic are unenforceable due to fraud in the inducement.

    g.   The Funds held by Republic are property of the Debtors' bankruptcy estate.

    h.   The Debtors' customers will not incur liability to Republic by paying the Debtors any outstanding or future accounts receivable.

**Count 4:**       **Conversion.**

85.    The Debtors incorporate the foregoing paragraphs as if fully set forth here.

86.    Conversion occurs when (a) the plaintiff owned, possessed, or had the right to immediate possession of property; (b) the property was personal property; (c) the defendant wrongfully exercised dominion or control over the property; and (d) the plaintiff suffered injury.

87.    Debtors owned, continue to own, and had and have a right to immediate possession of the Funds.

88.    The Funds are personal property.

89.    Republic wrongfully exercised and continues to wrongfully exercise control over the Funds.

90.    The Debtors suffered injury as a result of Republic's wrongful actions.

91.    Accordingly, the Debtors request that the Court award them compensatory damages in an amount to be determined at trial for conversion of the Funds.

**Count 5:**       **Texas Theft Liability Act.**

92.    The Debtors incorporate the foregoing paragraphs as if fully set forth here.

93.     Republic has committed theft within the meaning of Tex. Penal Code § 31.03 because it unlawfully appropriated the Funds.

94.     Republic therefore committed theft within the meaning of Tex. Civ. Prac. & Rem. Code § 134.002.

95.     Republic is liable for damages resulting from such theft.[12]

96.     Accordingly, the Debtors request that the Court award them compensatory damages in an amount to be determined at trial plus $1000 for each account receivable that Republic wrongfully stole from the Debtors.[13]

**Count 6:        Tortious Interference with Contract / Business Relations.**

97.     The Debtors incorporate the foregoing paragraphs as if fully set forth here.

98.     The Debtors have valid contracts with their customers and vendors.

99.     Republic has willfully and intentionally interfered with those contracts.

100.    Republic's interference has caused significant injury to the Debtors.

101.    Accordingly, the Debtors request that the Court award them compensatory damages in an amount to be determined at trial.

**Count 7:        Fraud.**

102.    The Debtors incorporate the foregoing paragraphs as if fully set forth here.

103.    By entering into the inventory loan agreement and the factoring agreement, Republic falsely represented to the Debtors that it would lend the Debtors money and pay the Debtors to purchase the Debtors' accounts receivable as part of the Debtors' efforts to rehabilitate their business.

104.    But that was never Republic's true intention.

---

[12]        Tex. Civ. Prac. & Rem. Code § 134.003.

[13]        Tex. Civ. Prac. & Rem. Code § 134.005(a)(1).

105.    Instead, Republic intended to usurp the Debtors' business and steal the Debtors' income under color of fraudulently obtained contractual rights.

106.    Indeed, Republic ultimately attempted to take control of the Debtors' business, even involving the police, and Republic collected accounts receivable for which it never paid.

107.    When Republic fraudulently induced the Debtors to enter into the inventory financing agreement and the factoring agreement, it falsely represented its intent to perform under those agreements, and it made such representation with the intent that the Debtors would act on it.

108.    The Debtors relied on such representations and purportedly assigned accounts receivable to Republic.

109.    As a result, the Debtors have suffered significant injury, including deprivation of the Funds.

110.    Accordingly, the Debtors request that the Court award them compensatory and exemplary damages in an amount to be determined at trial.

**Count 8:    Fraudulent Transfer.**

111.    The Debtors incorporate the foregoing paragraphs as if fully set forth here.

112.    The Debtors may avoid any transfer of an interest of the Debtors in property that was made within four years before the Petition Date in exchange for less than reasonably equivalent value because the Debtors were insolvent at the time.[14]

113.    The Debtors were also engaged in a business or transaction, or were about to engage in a business or transaction, for which their capital was unreasonably small.[15]

---

[14]    11 U.S.C. § 548(a)(1)(B)(ii)(I); Tex. Bus. & Comm. Code § 24.006(a).

[15]    11 U.S.C. § 548(a)(1)(B)(ii)(II); Tex. Bus. & Comm. Code § 24.005(a).

114.    To the extent that Republic contends that it owns all of the Debtors' accounts receivable and the proceeds thereof, including the Funds, despite never having advanced money in exchange for them and/or having already been paid in full from the collection of other accounts receivable, then the transfer of such accounts and proceeds constituted a fraudulent transfer.

115.    Accordingly, the Debtors may avoid such transfers and recover them from Republic in an amount to be determined at trial.[16]

**Count 9:        Breach of Contract.**

116.    The Debtors incorporate the foregoing paragraphs as if fully set forth here.

117.    To the extent there is a valid, enforceable contract between the Debtors and Republic, the Debtors are proper parties to sue under such contract.

118.    The Debtors performed their contractual obligations or were excused from doing so.

119.    Republic has breached the contract by, *inter alia*, collecting accounts receivable it did not purchase and refusing to advance funds after submission of accounts receivable by the Debtors.

120.    These breaches and other have caused the Debtors significant injury.

121.    Accordingly, the Debtors request that the Court award them compensatory damages in an amount to be determined at trial.

**Count 10:       Breach of Duty of Good Faith and Fair Dealing.**

122.    The Debtors incorporate the foregoing paragraphs as if fully set forth here.

123.    All contracts are governed by an implied covenant of good faith and fair dealing.

---

[16]        11 U.S.C. §§ 544(b)(1); 550(a)(1).

124. Republic breached this covenant by refusing to release collateral after it had been paid.

125. Republic also breached this covenant by manipulating the value of its collateral to force a default.

126. Republic also breached this covenant by unreasonably and unilaterally refusing to advance funds to the Debtors.

127. Republic's breaches have caused the Debtors significant harm and damage.

128. Accordingly, the Debtors request that the Court award them compensatory damages in an amount to be determined at trial.

**Count 11:**        **Breach of Fiduciary Duty.**

129. The Debtors incorporate the foregoing paragraphs as if fully set forth here.

130. As a result of its excessive efforts to take control of the Debtors' business, Republic owed fiduciary duties to the Debtors, including the duty of care, the duty of loyalty, the duty to act fairly, and the duty of good faith and fair dealing.

131. Republic breached these duties by using its control over the Debtors' business to steal from the Debtors.

132. Republic's breaches of fiduciary duty and the resulting theft has significantly damaged the Debtors' business.

133. Accordingly, the Debtors request that the Court award them compensatory and exemplary damages in an amount to be determined at trial.

**Count 12:**        **Liability to Creditors.**

134. The Debtors incorporate the foregoing paragraphs as if fully set forth here.

135.    Republic exercised excessive control over the Debtors' business and caused the Debtors' not to be able to pay many of their creditors, ultimately resulting in these bankruptcy cases.

136.    As a result of Republic directly causing damage to the Debtors' creditors through its control of the Debtors, Republic is directly liable to those creditors for any such damages.

137.    As a result of these bankruptcy cases, however, the Debtors, as debtors in possession, are the proper parties to bring any claims that belong to the Debtors creditors generally.

138.    Accordingly, the Debtors respectfully request that the Court enter a judgment providing that Republic is liable to the Debtors for all claims filed in these bankruptcy cases.

**Count 13:    Equitable Subordination.**

139.    The Debtors incorporate the foregoing paragraphs as if fully set forth here.

140.    Republic has engaged in inequitable conduct that caused significant harm to the Debtors.

141.    The Debtors therefore request that the Court equitably subordinate Republic's claim, if any, to the claims of all creditors and interest holders.

**Count 14:    Attorneys' Fees and Costs.**

142.    The Debtors incorporate the foregoing paragraphs as if fully set forth here.

143.    The Debtors are entitled to an award of attorneys' fees and costs under Tex. Bus. & Comm. Code § 24.013 and Tex. Civ. Prac. & Rem. Code § 38.001 & 134.005(b).

144.    The Debtors are also entitled to an award of attorneys' fees and costs under the Court's contempt power.

**Count 15:        Exemplary Damages.**

145.    The Debtors incorporate the foregoing paragraphs as if fully set forth here.

146.    The Debtors are entitled to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003 because Republic acted fraudulently and with malice.

**Count 16:        Temporary and Permanent Injunction.**

147.    The Debtors incorporate the foregoing paragraphs as if fully set forth here.

148.    The Debtors request that the Court enter a temporary and ultimately a permanent injunction that: (i) restrains and enjoins Republic from contacting the Debtors' customers for any reason; (ii) restrains and enjoins Republic from instructing the Debtors' customers to pay accounts receivable to Republic; (iii)  to the extent that any of the Debtors' customers contact Republic, (a) commands Republic to instruct such customers to pay the Debtors and not Republic, and (b) restrains and enjoins Republic from providing such customers with any other information or making any other assertions; (iv) restrains and enjoins Republic from collecting any further accounts receivable that are based on goods or services provided by the Debtors; (v) restrains and enjoins Republic from dissipating the Funds pending trial of this matter; and (vi) restrains and enjoins Republic from further violating the automatic stay.

**Count 17:        Temporary Restraining Order.**

149.    The Debtors incorporate the foregoing paragraphs as if fully set forth here.

150.    Republic has continuously and aggressively sought unlawfully to deprive the Debtors of funds to which the Debtors are entitled.  Before this bankruptcy case, Republic went so far as to attempt an actual, physical coup of the Debtors' business operations, even involving local police.  Republic has collected and continues to collect accounts receivable that the Debtors never purportedly assigned to Republic and for which Republic never paid.  This bad-faith,

unlawful behavior ultimately led to the Debtors seeking refuge in this Court under the protection of the automatic stay.

151.    Perhaps unsurprisingly, Republic appears to believe that it is exempt from the automatic stay, despite the stay's unquestionably broad reach.  Even after the Petition Date, Republic expressly instructed one of the Debtors' customers not to pay the Debtors, regardless of the fact that the Debtors never assigned, and Republic never paid for, the accounts receivable in question and/or Republic had already been paid in full for any advances made on such accounts receivable through its collection of other accounts.  This clear and unapologetic stay violation demonstrates that Republic will not comply with federal law without the Court's prompt intervention.

152.    As a direct result of Republic's unlawful activity, at least one customer is withholding more than $100,000 in funds from the Debtors that are unquestionably due. Depending on the scope of Republic's unlawful activity, which is not currently known, allowing Republic to continue to influence the Debtors' customers in this way could cause the Debtors irreparable injury.  Republic's actions could ultimately result in these chapter 11 cases failing and being converted to chapter 7.  If that happens, the Debtors will be liquidated and their business will be lost forever, along with the jobs the Debtors provide to their employees.

153.    Accordingly, the Debtors respectfully request that the Court enter a temporary restraining order that: (i) restrains and enjoins Republic from contacting the Debtors' customers for any reason; (ii) restrains and enjoins Republic from instructing the Debtors' customers to pay accounts receivable to Republic; (iii)  to the extent that any of the Debtors' customers contact Republic, (a) commands Republic to instruct such customers to pay the Debtors and not Republic, and (b) restrains and enjoins Republic from providing such customers with any other

information or making any other assertions; (iv) restrains and enjoins Republic from collecting

any further accounts receivable that are based on goods or services provided by the Debtors; (v)

restrains and enjoins Republic from dissipating the Funds pending trial of this matter; and (vi)

restrains and enjoins Republic from further violating the automatic stay

## V.     **PRAYER**

WHEREFORE, CONSIDERING THE FOREGOING, the Debtors respectfully request

that Republic be cited to appear and answer this Complaint and, upon trial of this adversary

proceeding, that the Court award the Debtors the following:

A.     A temporary restraining order that: (i) restrains and enjoins Republic from contacting the Debtors' customers for any reason; (ii) restrains and enjoins Republic from instructing the Debtors' customers to pay accounts receivable to Republic; (iii)  to the extent that any of the Debtors' customers contact Republic, (a) commands Republic to instruct such customers to pay the Debtors and not Republic, and (b) restrains and enjoins Republic from providing such customers with any other information or making any other assertions; (iv) restrains and enjoins Republic from collecting any further accounts receivable that are based on goods or services provided by the Debtors; (v) restrains and enjoins Republic from dissipating the Funds pending trial of this matter; and (vi) restrains and enjoins Republic from further violating the automatic stay;

B.     A temporary and permanent injunction that: (i) restrains and enjoins Republic from contacting the Debtors' customers for any reason; (ii) restrains and enjoins Republic from instructing the Debtors' customers to pay accounts receivable to Republic; (iii)  to the extent that any of the Debtors' customers contact Republic, (a) commands Republic to instruct such customers to pay the Debtors and not Republic, and (b) restrains and enjoins Republic from providing such customers with any other information or making any other assertions; (iv) restrains and enjoins Republic from collecting any further accounts receivable that are based on goods or services provided by the Debtors; (v) restrains and enjoins Republic from dissipating the Funds pending trial of this matter; and (vi) restrains and enjoins Republic from further violating the automatic stay;

C.     The following declarations: (i) the contracts between the Debtors and Republic are unenforceable due to lack of consideration; (ii) the contracts between the Debtors and Republic are unenforceable due to failure of consideration; (iii) the contracts between the Debtors and Republic are unenforceable due to economic duress; (iv) the contracts between the Debtors and Republic are unenforceable due to business compulsion; (v) the contracts between the Debtors and Republic are unenforceable due to unconscionability; (vi) the contracts between the Debtors

and Republic are unenforceable due to fraud in the inducement (vii) the Debtors' accounts receivable and the Funds held by Republic are property of the Debtors' bankruptcy estate; and (viii) the Debtors' customers will not incur liability to Republic by paying the Debtors any outstanding or future accounts receivable;

D.  Money damages, including compensatory and exemplary damages, in an amount to be determined at trial;

E.  Reasonable attorneys' fees and costs;

F.  Prejudgment and post-judgment interest on any monetary award as is otherwise provided for by law; and

G.  Such other and further legal or equitable relief as may be just and proper.


Dated February 19, 2016.

Respectfully submitted,

/s/  *Melissa S. Hayward*

Melissa S. Hayward
    Texas Bar No. 24044908
    MHayward@FranklinHayward.com
Julian Vasek
    Texas Bar No. 24070790
    JVasek@FranklinHayward.com
**FRANKLIN HAYWARD LLP**
10501 North Central Expy, Suite 106
Dallas, Texas 75231
(972) 755-7100 (*tel.*)
(972) 755-7110 (*facsimile*)

***Counsel for the Debtors***