## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **BAILEY TOOL &** | § | **Case No. 16-30503-bjh7** |
| **MANUFACTURING COMPANY, et al.** | § | **Chapter 7** |
| | § | |
| Debtors. | § | |
| ——————————————— | § | ——————————————— |
| | § | |
| **BAILEY TOOL &** | § | |
| **MANUFACTURING COMPANY,** | § | |
| **HUNT HINGES, INC. and** | § | |
| **CAFARELLI METALS, INC.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | **Adv. No. 16-03025-bjh** |
| | § | |
| **REPUBLIC BUSINESS CREDIT, LLC,** | § | |
| | § | |
| Defendant and Counter-Plaintiff, | § | |

---

### DEFENDANT REPUBLIC BUSINESS CREDIT, LLC'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

---

Respectfully submitted,

By:  */ s / Richard A. Illmer*
Richard A. Illmer
State Bar No. 10388350
Alex E. Brakefield
State Bar No. 24105523
**HUSCH BLACKWELL LLP**
1900 N. Pearl Street, Suite 1800
Dallas, Texas  75201
214.999.6100
214.999.6170 *facsimile*
Rick.Illmer@huschblackwell.com
Alex.Brakefield@huschblackwell.com

***Counsel for Republic Business Credit, LLC***

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iv

I.   STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................ 1

   A.   By early 2015, the Debtors' business was failing; they needed a new
        source of financing.................................................................. 1

   B.   The Purchase Agreement .......................................................... 1

        a.   Debtors sold all Accounts to RBC ................................... 1

        b.   RBC had no obligation to advance 90%, rather the amount is
             discretionary and 90% is the maximum.................................. 2

        c.   RBC has the right to collect directly from the Account Debtors............... 3

        d.   Merger clause; no reliance on oral representations.................................. 3

        e.   Debtors' continuing obligations.................................................. 4

   C.   No fiduciary relationship ........................................................ 4

   D.   Debtors' default. .................................................................. 4

   E.   Status of Accounts, fees, and charges. .......................................... 5

II.  SUMMARY JUDGMENT STANDARD AND APPLICABLE LAW ........................... 5

   A.   Summary Judgment Standard ................................................... 5

III. ARGUMENT AND AUTHORITIES.................................................... 6

   A.   No Breach of Fiduciary Duty (Count 17) or Liability to Creditors as
        Partner Count 16)................................................................ 6

   B.   No Fraud (Count 11), DTPA (Count 13) or Negligent Misrepresentation
        (Count 12) ...................................................................... 7

   C.   No Breach of Duty of Good Faith and Fair Dealing (Count 15) ........... 9

   D.   No Business Disparagement (Count 9).................................... 9

   E.   Declaratory Relief (Count 3) ............................................. 10

   F.   No Conversion (Count 4).................................................. 10

ii

G.  No Violation of Texas Theft Liability Act (Count 5) ........................................... 11

H.  No Tortious Interference with Contract / Business Relations (Count 6) .............. 12

I.  No Tortious Interference with Prospective Contracts and Business
Relations (Count 7) ............................................................................................ 13

J.  No wrongful interference with debtors in bankruptcy and their rights to
reorganize (Count 8) .......................................................................................... 14

K.  No Breach of Contract (Count 14) ...................................................................... 14

L.  No Attorneys' Fees and Costs.............................................................................. 15

IV.  CONCLUSION ................................................................................................................ 16

CERTIFICATE OF SERVICE ................................................................................................ 17

DocID: 4841-3375-4027.5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACS Inv'rs, Inc. v. McLaughlin,*
 943 S.W.2d 426 (Tex. 1997) ............................................................................ 12

*Anderson v. Liberty Lobby Inc.,*
 477 U.S. 242 (1986) .......................................................................................... 5

*Bokor v. State,*
 114 S.W.3d 558 (Tex.App.—Fort Worth 2002, no pet.) ................................... 12

*Brooks v. Excellence Mortgage, Ltd.,*
 486 S.W.3d 29 (Tex. App.—San Antonio 2015, pet. denied) ............................ 14

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) .......................................................................................... 6

*Coin-mach corp. v. Aspenwood Apt. Corp.,*
 417 S.W.3d 909 (Tex. 2013) ............................................................................. 13

*Douglass v. United Servs. Auto. Ass'n,*
 79 F.3d 1415 (5th Cir. 1996) (en banc),
 *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1) ........................ 6

*English v. Fischer,*
 660 S.W.2d 521 (Tex. 1983) ............................................................................. 9

*Fluor Enterprises, Inc. v. Conex Intern. Corp.,*
 273 S.W.3d 426 (Tex. App.—Beaumont 2008, pet. denied) ............................. 9

*Fontenot v. Upjohn Co.,*
 780 F.2d 1190 (5th Cir. 1986) .......................................................................... 5

*Forest Oil Corp. v. McAllen,*
 268 S.W.3d 51 (Tex. 2008) ............................................................................... 8

*Hux v. S. Methodist Univ.,*
 819 F.3d 776 (5th Cir. 2016) ............................................................................ 9

*In re Lipsky,*
 460 S.W.3d 579 (Tex. 2015) ............................................................................. 9

*Jackson Joint Venture v. World Constr. Co., Inc.,*
 499 So.2d 426 (La.App. 4th Cir.1986) .............................................................. 15

iv

*Jones v. Patterson*,
    No. 11-17-00112-CV, 2019 WL 2051301 (Tex. App. May 9, 2019)............................. 11, 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................................................. 6

*McCallum Highlands, Ltd. v. Washington Capital Dus Inc.*,
    66 F.3d 89 (5th Cir. 1995) ........................................................................................ 6

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*,
    991 S.W.2d 787 (Tex. 1999)..................................................................................... 8

*McCullough v. Scarbrough, Medlin & Assocs.*,
    435 S.W.3d 871 (Tex.App.—Dallas, 2014, pet. denied)................................. 11, 12

*Olabisiomotosho v. City of Houston*,
    185 F.3d 521 (5th Cir. 1999) .................................................................................... 6

*Prudential Ins. v. Financial Rev. Serv.*,
    29 S.W.3d 74 (Tex. 2000)....................................................................................... 12

*Schlumberger Technology Corp. v. Swanson*,
    959 S.W.2d 171 (Tex. 1997).................................................................................... 7

*VPI Holding Co. v. Success Res. USA LLC*,
    No. 3:12-CV-3785-N, 2014 WL 12584331 (N.D. Tex. Dec. 2, 2014)..................... 6

*Wells Fargo Bank NW, N.A v. RPK Capital XVI, LLC*,
    360 S.W.3d 691 (Tex. App. – Dallas 2012, no pet.)............................................. 10

*Whitaker v. Bank of El Paso*,
    850 S.W.2d 757 (Tex. App.—El Paso 1993, no writ) ..................................... 10, 11

*Zorrilla v. Aypco Constr. II, LLC*,
    469 S.W.3d 143 (Tex. 2015).................................................................................... 7

## **Statutory Authorities**

11 U.S.C. § 548.......................................................................................................... 14, 15

28 U.S.C. § 636(b)(1) ...................................................................................................... 6

Tex. Penal Code Ann. § 31.03 ....................................................................................... 11

DocID: 4841-3375-4027.5

## **Rules and Regulations**

Fed. R. Civ. P. 56 ................................................................................................................. 1, 5

Local Rule 7 ......................................................................................................................... 1

Local Rule 56 ....................................................................................................................... 1

DocID: 4841-3375-4027.5

NOW COMES, Defendant and Counter-Plaintiff Republic Business Credit, LLC ("RBC") and, pursuant to Federal Rule of Civil Procedure 56, and Local Rules 7 and 56, files this its Motion for Summary Judgment Against Plaintiffs Bailey Tool & Manufacturing Company ("Bailey Tool"), Hunt Hinges, Inc. ("Hunt"), and Cafarelli Metals, Inc. ("Cafarelli") (collectively, "Debtors") and in support of the same respectfully show the Court as follows:

## I.  STATEMENT OF UNDISPUTED MATERIAL FACTS

1.  Pursuant to Fed. R. Civ. P. 56(c)(1), RBC sets forth the following statement of undisputed material facts.

### A.  By early 2015, the Debtors' business was failing; they needed a new source of financing.

2.  In 2013, Bailey Tool & Manufacturing lost in excess of $2.3 million.[1]  In 2014, Bailey Tool and Manufacturing lost in excess of $3.7 million.[2]  By late 2014, the Debtors commercial lender, Comerica Bank, asked them to take their business elsewhere.[3]  In their search for a new lender, Debtors were referred to RBC by Regions Bank.[4]

### B.  The Purchase Agreement

#### a.  Debtors sold all Accounts to RBC

3.  On or about February 25, 2015, each of the Debtors entered into a Revolving Inventory Loan and Security Agreement (the "Inventory Agreement") and an Agreement for Purchase and Sale dated February 25, 2015 (the "Purchase Agreement").[5]  The Purchase Agreement is controlled by Louisiana law.[6]  Under the Purchase Agreement, Debtors sold "all of [Debtors'] right, title and interest in and to [Debtors'] *now existing and herein after created*

---

[1] 2013 U.S. Income Tax Return, App.1-19.
[2] 2014 US. Income Tax Return, App. 20-48.
[3] Buttles Depo, 59:13-15; 69:25-70:2, App. 54.
[4] Buttles Dep, 73:22-74:1, App. 55.
[5] App. 85-127 and Buttles Depo. 97:22-104:14, App. 61-62.
[6] Purchase Agreement, Purchase Provisions, ¶10.1, App. 92.

*Accounts*, together with all corresponding rights with respect thereto and proceeds thereof…"[7]

The Purchase Agreement states, "[i]t is the intention of [Plaintiffs] and [RBC] that the sales of

the Accounts constitute true and actual sales of the Accounts from [Plaintiffs] and [RBC]."[8]

This court has already ruled that *all* of Debtor's Accounts from March 3, 2015 to November 5,

2016 were purchased by RBC.[9]

> **b.    RBC had no obligation to advance 90%, rather the amount is discretionary and the Advance Rate is up to 90%.**

4.    Contrary to Debtors' assertion, the Purchase Agreement does not require RBC to

advance 90% of the amount of each Account sold to RBC.[10]    Rather, RBC has an "option to pay

to Seller (Debtors) an Advance for all Eligible Accounts…"[11]    As set forth in Annex A of the

Purchase Agreement, an Account may be ineligible for an advance if, for example, it was aged

beyond 90 days or due from an Account Debtor that did not pay within invoice terms.[12]

5.    The Purchase Agreement also gives RBC the right to create a Reserve (as that

term is defined in the Purchase Agreement) for Obligations (as that term is defined in the

Purchase Agreement) that would otherwise be due RBC under the terms of the Purchase

Agreement (the "Reserve").[13]    RBC determines the amount and duration of the Reserve in its

"sole and exclusive discretion."[14]    The term "Obligation" is defined, in part, as "*all present and*

*future* obligations owing by Seller to Purchaser..."[15]    Among other things, the Debtors have the

---

[7] Purchase Agreement, ¶1.1, App. 87.
[8] Purchase Agreement, ¶1.5., App. 87.
[9] Report and Recommendation, [Dkt. 165], p. 6.
[10] Debtors' Fourth Amended Complaint, ¶ 24.
[11] Purchase Agreement, ¶ 2, App, 87; *see* also Buttles' depo. 141:22-142:1, App. 60.
[12] Purchase Agreement, Annex A, p. 1, Sec. C, App. 95.
[13] Purchase Agreement, Purchase Provisions, ¶ 4, App. 88.
[14] *Id.*
[15] Purchase Agreement, Annex A (emphasis added), App. 95.

obligation to reimburse RBC for attorneys' fees incurred by RBC.[16]  On the other hand, Debtor

expressly waived any right to seek attorney's fees.[17]

### c.    RBC has the right to collect directly from the Account Debtors

6.    The Purchasing Agreement entitles RBC to notify Debtors' Account Debtors that

payment of accounts receivable shall be made directly to RBC.[18]  RBC sent each Account

Debtor a notice of notices of assignment ("NOA") advising that payments should be sent directly

to RBC.[19]  Upon receipt of the NOA, Debtors' Account Debtors became obligated to remit

payment to RBC in accordance with § 9.406 of the Uniform Commercial Code.

### d.    Merger clause; no reliance on oral representations.

7.    In addition, the Purchase Agreement includes a "merger clause" in which Debtors

expressly disclaimed reliance on oral representations:

> Entire Agreement.  The Purchase Agreement contains the entire
> understanding of the Parties hereto and relating to the subject matter
> hereof and is the final and complete expression of their intent.  No prior or
> contemporaneous negotiations, promises, agreements, covenants, or
> representations of any kind or nature, whether made orally or in writing
> have been made by the Parties, or any of them…it being the intention of
> the Parties hereto that in the event of any subsequent litigation,
> controversy, or dispute concerning the terms or provisions of this Purchase
> Agreement, no party shall be permitted to offer or introduce oral or
> extrinsic evidence concerning the terms and conditions hereof that are not
> included or referred to herein and not reflected in writing.[20]

> *        *        *

> Merger/No Reliance.  [Debtor] specifically acknowledges and agrees that
> [RBC] has not made and shall not at any time be deemed to have made
> and hereby disclaims any representations, warranties, promises, covenants,
> agreements or guaranties of any kind or character whatsoever, whether

---

[16] Purchase Agreement,¶10.4, App. 93 ("[Debtor] agrees to reimburse [RBC] for all reasonable attorney's fees, court costs and other expenses incurred by [RBC] arising under or related to this [Purchasing] Agreement").
[17] Purchase Agreement, ¶ 10.4, App. 93.
[18] Purchase Agreement,  1.3.1, App. 87.
[19] Affidavit of Melissa Baines ("Baines Affidavit"), ¶ 6, App. 76.
[20] Purchase Agreement § 12.2, App. 93.

express or implied, oral or written, past, present or future of by [RBC] except as specifically set forth herein.  This Agreement is executed freely and voluntarily and without reliance upon any statement or representation of [RBC]…There are no and [Debtor] is not relying on any written or oral representations not expressly written in this Purchasing Agreement.[21]

### e.    Debtors' continuing obligations

8.    Finally, Paragraph 8.4 of the Purchase Provisions provides that upon the termination of the Purchase Agreement, the terms of the Purchase Agreement continue to be effective until all Obligations of the Debtors have been completed and satisfied in full.[22]

### C.    No fiduciary relationship

9.    The Purchase Agreement provides that the relationship between the parties is principally that of seller and purchaser and that, "…there is not now, and Seller [Debtors] will at no time seek or attempt to establish, any fiduciary or confidential relationship between Purchaser and Seller.  Seller waives any right to assert, now or in the future, the existence or creation of any fiduciary or confidential relationship between Purchase and Seller…"[23]

### D.    Debtors' default.

10.    On July 10, 2015, RBC sent the Debtors a Notice of Default letter, describing the Debtors' numerous material breaches of the Purchasing Agreement.[24]

11.    On September 17, 2015, RBC sent the Debtors a Notice of Default and Demand for Payment letter, which payment demand was required to be satisfied by the Debtors on or before September 21, 2015.[25]

---

[21] Purchase Agreement, ¶ 12.15, App. 94.
[22] Purchase Agreement, ¶ 8.4, App. 91.
[23] Purchase Agreement ¶ 12.6, App. 92.
[24] Baines Aff. ¶ 7, App. 76 and App. 78-81.
[25] *Id.* at ¶ 8, App. 76 and App. 82-84.

### E.    Status of Accounts, fees, and charges.

12.    This court ruled that the Agreement terminated on November 5, 2015 when Debtors ceased providing Accounts to RBC.[26]

13.    However, Section 8.4 of the Purchase Provisions of the Purchase Agreement state that the Purchase Agreement, "… shall continue to be effective until all transactions entered into and Obligations incurred hereunder have been completed and satisfied in full."  One of Debtor's unsatisfied Obligations is to pay RBC's legal fees.[27]

14.    RBC has incurred $600,000.00 in legal fees in this matter, and the fees continue to accrue as counsel for RBC works on the case.[28]

15.    The amount RBC contends Debtors owe RBC as of November is not less than $$1,292,077.94.[29]

## II.    SUMMARY JUDGMENT STANDARD AND APPLICABLE LAW

### A.    Summary Judgment Standard

16.    A trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 247 (1986).  When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted).  "When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's

---

[26] Report and Recommendation [Dkt. 165], p. 8.  RBC does not concede the ruling on the termination date is correct, but acknowledges and respects the ruling for purposes of this motion.  RBC reserves the right to challenge this ruling in the event of an appeal.
[27] Purchase Agreement, §10.4, App. 93.
[28] *Id.* ¶ 10. App.76.
[29] *Id.* ¶ 11. App.76.

claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense." *VPI Holding Co. v. Success Res. USA LLC*, No. 3:12-CV-3785-N, 2014 WL 12584331, at *2 (N.D. Tex. Dec. 2, 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

17.    Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "conclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## III.    ARGUMENT AND AUTHORITIES

### A.    No Breach of Fiduciary Duty (Count 17) or Liability to Creditors as Partner Count 16)

18.    In the Purchase Agreement, Debtors agreed that there was no confidential or fiduciary relationship between the parties.[30] Furthermore, Buttles admits that the Debtors' only agreements with RBC were those set forth in writing (the Purchase Agreement and Inventory Agreement).[31] A brief review of the written agreements establishes as a matter of law that the Debtors were not "partners" with RBC. Furthermore, there was no agreement between the

---

[30] Purchase Agreement, §12.6, App. 94.
[31] Buttles Depo, 209:21-24, App. 66.

Debtors and RBC to share profits[32]  There was no agreement to share losses.[33]  There was no agreement for RBC to control the Debtor's business; indeed RBC's alleged unauthorized control over the businesses is one of Debtors' complaints about RBC.[34]

19.    Furthermore, the Debtors do not have standing to complain about alleged damages to the "Debtors' creditors".[35]  Therefore, summary judgment is proper on Counts 16 and 17 of the Debtor's Fourth Amended Complaint.

### B.    No Fraud (Count 11), DTPA (Count 13) or Negligent Misrepresentation (Count 12)

20.    A common-law fraud claim requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury. *Zorrilla v. Aypco Constr. II, LLC,* 469 S.W.3d 143, 153 (Tex. 2015) (internal citations omitted). Fraudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made.  *Id.*  Contractual provisions negating reliance are enforceable under Texas law.

21.    Parties may neg6ate fraudulent inducement claims based upon contractual disclaimers where the parties' intent is clear and specific.  *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997).  As the Supreme Court noted in *Forest Oil*:

> After the fact protests of misrepresentation are easily lodged, and parties who contractually promise not to rely on extra contractual statements – more than that, promise that they have not relied upon such statements – should be held to their word.  Parties should not sign contracts while crossing their fingers behind their backs…If disclaimers of reliance cannot ensure finality and preclude post-deal claims for fraudulent inducement, then freedom of contract, even among the most

---

[32] *Id.* at  209:14-20.
[33] *Id.* at  209:25-210:4.
[34] Buttles Depo, 215:25-216:9, App. 67.
[35] Fourth Amended Complaint, paragraph 194.

knowledgeable parties advised by their most knowledgeable legal counsel, is grievously impaired.

*Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 62 (Tex. 2008).

22.    To succeed on a claim for negligent misrepresentation, a Plaintiff must prove: (1) the Defendant made a representation to the Plaintiff in the course of the Defendant's business or in a transaction in which the Defendant had an interest; (2) the Defendant supplied false information for the guidance of others; (3) the Defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the Plaintiff justifiably relied on the representation; and (5) the Defendant's negligent misrepresentation proximately caused the Plaintiff's injury.  *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

23.    The Debtors agreed that RBC did not make any representations other than those forth in the Purchase Agreement.[36]  The Debtors also agreed they were not relying on any representation outside the Purchase Agreement.[37]  Finally, the Debtors agreed RBC did not have an obligation to advance 90% on every Account, but rather only an amount (up to a maximum of 90%) as RBC determined in its sole discretion.[38]  In fact, the statements that Debtors claim were misrepresentations were only vague promises of future performance and goodwill:

Q:    …what misrepresentations, if any were made at this first meeting?

A:    Well, just that you [RBC] would be a reliable factor and help us conduct our affairs and migrate back to a commercial banking relationship that we were interested in pursuing with Regions.  And, that you would act honorably and faithfully and execute your contract with us, and we would conduct the business and, you know, both honor our obligations.

Q:    Anything else?

---

[36] Purchase Agreement ¶ 12.2, App. 94.
[37] Purchase Agreement, ¶ 12.15, App. 94.
[38] Purchase Agreement, ¶ 4, ¶ 10, App. 88 and 93.

A:      Any other misrepresentations?

Q:      At this first meeting?

A:      I would say if misrepresentations were made and that was one, then that it was conducted at that first meeting.  And I don't recall any others right now.[39]

24.     Because there was no representation of a material fact and no reliance by Debtors, there cannot be a viable claim for fraud, negligent misrepresentations, or violations of the DTPA.

### C.      No Breach of Duty of Good Faith and Fair Dealing (Count 15)

25.     Texas law does not impose a generalized contractual duty of good faith and fair dealing and, in fact, rejects it in almost all circumstances.[40]  There are two exceptions to this general rule:    (1) when the parties are in a formal fiduciary relationship (e.g., trustee-beneficiary); and (2) when there is a special or confidential relationship between the parties (e.g., insurer-insured).[41]  Where, as here, the Purchase Agreement expressly disclaims a fiduciary duty and confidential relationship, RBC did not owe Debtors any such duty.  Because there is was no duty of good faith and fair dealing owed, there can be no breach of the duty.

### D.      No Business Disparagement (Count 9)

26.     To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff.  *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015).  A defendant acts with malice when it makes the statement with knowledge of the falsity, with reckless disregard as to the statements' truth, or with ill will or an intent to interfere with the plaintiff's economic interest.  *Fluor Enterprises, Inc. v. Conex Intern. Corp.*, 273 S.W.3d 426, 439 (Tex. App.—Beaumont 2008, pet. denied).

---

[39] Buttles Depo, 92:25-93:14, App. 58.
[40] *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016) (citing *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983)).
[41] *Id.*

27.     RBC's business disparagement claim fails because the allegedly disparaging claim---that "Debtors did not own their accounts receivable"[42]---was true.  The court has already resolved this issue, "Republic purchased all the Debtors' Accounts generated during the Term of the Agreements."[43]

### E.     Declaratory Relief (Count 3)

28.     The court's ruling that RBC purchased all of the Debtors' Accounts generated during the term of the agreements disposes of the following requests by Plaintiff for Declaratory Relief:  ¶ 120(a), (b), (d), (e), (f), (i), (j) through (o), (p), and (q) of Debtors' Fourth Amended Complaint.[44]

### F.     No Conversion (Count 4)

29.     To establish conversion of personal property, a plaintiff must prove (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant, unlawfully and without authorization, assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights; (3) the plaintiff made a demand for the property; and (4) the defendant refused to return the property.  The plaintiff must also establish he was injured by the conversion.  *Wells Fargo Bank NW, N.A v. RPK Capital XVI, LLC,* 360 S.W.3d 691, 699 (Tex. App. – Dallas 2012, no pet.) (internal citations omitted).

30.     However, a qualified good faith refusal based on a reasonable requirement does not constitute conversion.  *Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex. App.—El Paso 1993, no writ) (internal citation omitted).  A refusal to deliver property on request may be

---

[42] Fourth Amended Complaint, para.153.
[43] Report and Recommendation, p. 6.
[44] See Report and Recommendation, *passim.*

justified in order to investigate the rights of the parties, and no conversion results if such refusal is made in good faith to resolve a doubtful matter. *Id.*

31.     This court already ruled that the funds from Accounts generated before November 5, 2015 belong to RBC.[45]  Furthermore, as to funds collected on Accounts created on or after November 6, 2015, RBC is entitled to possession of them as a Reserve[46] which shall serve as security for Debtors Obligations[47], including RBC's attorney's fees.[48]  The total amount of Obligations owed by Debtors to RBC is $1,292,077.94.[49]  Because Debtors are not entitled to the Funds, RBC cannot possibly have converted them.

32.     Finally, RBC is entitled to summary judgment on this issue because it has satisfied the defense of qualified refusal.  This Court's partial denial of Debtors' Motion for Summary Judgment on the issue of ownership of the funds is evidence that there was a genuine dispute as to the parties' rights and that RBC's assertion that it owned the funds was not in bad faith.

### G.     No Violation of Texas Theft Liability Act (Count 5)

33.     The Texas Theft Liability Act ("TTLA") provides civil liability for criminal theft. *Jones v. Patterson*, No. 11-17-00112-CV, 2019 WL 2051301, at *5 (Tex. App. May 9, 2019). To prevail on a claim under the Texas Theft Liability Act ("TTLA"), Debtors must prove that RBC committed theft as defined by the Texas Penal Code. *See McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 906 (Tex.App.—Dallas, 2014, pet. denied); *see also* Tex. Penal Code Ann. § 31.03 (West) ("A person commits theft under the Texas Penal Code if he unlawfully appropriates property with intent to deprive the owner of the property.").  A bona fide

---

[45] Report and Recommendation, p. 8.
[46] Purchase Agreement, ¶ 4, App. 88.
[47] *Id.*
[48] Purchase Agreement, § 10.4, App. 93.
[49] Baines Aff. ¶ 10, App. 76.

dispute as to rightful ownership of the property can negate the requisite criminal intent for a finding of theft. *See Bokor v. State*, 114 S.W.3d 558, 560 (Tex.App.—Fort Worth 2002, no pet.); *Jones v. Patterson,* 2019 WL 2051301, at *5. Intent is determined at the time of the alleged theft. *See McCullough*, 435 S.W.3d at 906.

34. Here, as evidenced by the Court's ruling on the Debtors' Motion for Summary Judgment, there was a bona fide dispute regarding whether RBC purchased all Accounts from Debtors and whether execution of a release was required to terminate the Agreement. The fact that the court found in favor of RBC on Accounts through November 5, 2015 is dispositive of the Texas Theft Act Claim. There was a bona fide dispute about the rightful ownership of the property. Indeed, there is still a dispute whether the funds in the Court Registry are available to satisfy RBC's claims for attorney's fees.

### H.    No Tortious Interference with Contract / Business Relations (Count 6)

35. To succeed on a claim for tortious interference with an existing contract, a Plaintiff must prove: (1) the Plaintiff had a valid contract; (2) the Defendant willfully and intentionally interfered with the contract; (3) the interference proximately caused the Plaintiff's injury; and (4) the Plaintiff incurred actual damage or loss. *Prudential Ins. v. Financial Rev. Serv.*, 29 S.W.3d 74, 77 (Tex. 2000). It is not tortious interference to do what is allowed by contract. Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference. *ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

36. The Purchasing Agreement permits RBC to notify Account Debtors to remit payment directly to RBC.[50] Therefore, sending Notices of Assignment to all of Debtors'

---

[50] Purchase Agreement, ¶ 1.3.1, App. 87.

Account Debtors, including Trelleborg, does not constitute tortious interference because it is justified and authorized by the Purchase Agreement.

37.     Finally, RBC did not prevent Debtors from paying any vendor at any time.[51] RBC was not a signatory to any Debtor bank account.[52]  Debtor was free to pay any vendor at any time.[53]  It was not possible to control who the Debtors did or did not pay.[54]  RBC only had control over the amount of money, if any, it advanced to debtors on Accounts.[55] Debtors' allegations about exercising "control" over them refer to RBC's unwillingness to advance funds, which RBC had no obligation to do.

## I.     No Tortious Interference with Prospective Contracts and Business Relations (Count 7)

38.     To succeed on a claim for tortious interference with a prospective contract, a Plaintiff must prove:  (1) there was a reasonable probability that the Plaintiff would have entered into a business relationship with a third person; (2) the Defendant intentionally interfered with the relationship; (3) the Defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the Plaintiff's injury; (5) the Plaintiff suffered actual damage or loss.  *Coin-mach corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

39.     Debtors have not identified a reasonably probable business relationship with which RBC could interfere.  To the extent that Debtors point to the potential for a relationship with TEAM Partners as a "prospective contract"[56], this business relationship was far from probable.  Indeed, Buttles admitted at the time that any prospective contract with TEAM Partners

---

[51] Baines Aff. ¶ 12, App. 76.
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] Fourth Amended Complaint, ¶ 146(a)-(b).

was a longshot. ("I am realistic about the prospects for this, less than 50 percent").[57]

Nevertheless, when presented with the possibility of a future relationship between Debtors and

TEAM Partners, RBC responded positively to the news and encouraged Debtors' to consider it

("While [the TEAM Partners letter] is encouraging, like it states, it is preliminary…It is,

however, encouraging, and I would certainly explore this opportunity earnestly.").[58]

40.     With regard to "constricting Debtors' operations and cash flow[59], RBC was under

no obligation to provide additional money to Debtors so it is not responsible for Debtor's demise.

Summary judgment is proper on Court 7.

### J.     No wrongful interference with debtors in bankruptcy and their rights to reorganize (Count 8)

41.     The court's ruling that Debtors sold all their Accounts to RBC during the term of

the Agreements and that RBC owns all the money from Accounts created on or before

November 5 is dispositive of this claim.  There is no allegation, or evidence, that Debtors could

have successfully reorganized with only the proceeds from Accounts created after November 6,

2015.   This is particularly so where RBC had a first lien priority security interest in the

Accounts[60] to secure payment of Obligations which Debtors owe RBC, including attorney's fees.

Summary judgment is proper on Count 8.

### K.     No Breach of Contract (Count 14)

42.     The elements of a breach of contract claim are (1) a valid contract; (2) the

plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the

plaintiff was damaged as a result of the breach.  *Brooks v. Excellence Mortgage, Ltd.*, 486

S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied) (internal citations omitted); *see also*

---

[57] Buttles Depo, 168:1 – 170:4, App. 63-64.
[58] See July 7, 2015 Allen Frederic email, App. 72-73.
[59] Fourth Amended Complaint, ¶ 146 (c).
[60] Purchase Agreement, Purchase Provisions, ¶ 6, App. 89

*Jackson Joint Venture v. World Constr. Co., Inc.*, 499 So.2d 426, 427 (La.App. 4th Cir.1986) (reciting the elements under Louisiana law).

43.    Debtors' petition claims that RBC breached the contract by:

collecting accounts receivable it did not purchase and refusing to advance funds in bad faith after submission of accounts receivable by the Debtors, and committing all of the other bad acts previously alleged, by withholding funds on the premise that Republic was entitled to receive a Release from Debtors which the Court has now found to be a false premise, and for the other acts alleged.

(Debtors' Fourth Am. Cmplt, ¶ 178.).

44.    Putting aside Debtors' mischaracterization of the nature of the actions, such actions are not breaches of the Purchasing Agreement.  The Purchasing Agreement clearly provides that it was within RBC's sole discretion to advance funds at a rate of up to 90%, but that such advance was in no way an obligation.[61]   And, while this court found that Debtor's were not required to execute the Release, RBC was still not required to release the funds because it was contractually entitled to create a Reserve and withhold funds as an offset for attorneys' fees and other charges.[62]   The actions of which Debtors complain were expressly permitted by the terms of the Purchasing Agreement.  Accordingly, RBC is entitled to summary judgment on the breach of contract claim.

**L.    No Attorneys' Fees and Costs**

45.    Debtors expressly waived the right to seek attorneys' fees.   Purchasing Agreement, ¶ 10.4 ("Notwithstanding the existence of any law, statute or rule, in any jurisdiction that may provide [Debtor] with a right to attorney's fees or costs, [Debtor] hereby waives any and all rights to hereafter seek attorney's fees or costs thereunder").   Debtors are prohibited by

---

[61] Purchase Agreement, ¶ 2, App. 85.
[62] Purchase Agreement, ¶ 4, ¶ 10.4, App. 88 and 92.

contract from recovering attorneys' fees in this matter; accordingly, RBC is entitled to summary

judgment on this count.

## IV.    CONCLUSION

46.    For the reasons set forth above, RBC respectfully requests the Court grant

summary judgment in favor of RBC on Debtors' claims.


Dated: November 15, 2019                    Respectfully submitted,


By:    */s/ Richard A. Illmer*
       Richard A. Illmer
       State Bar No. 10388350
       Rick.Illmer@huschblackwell.com
       Alex E. Brakefield
       Bar No. 24105523
       Alex.Brakefield@huschblackwell.com

**HUSCH BLACKWELL LLP**
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 (*facsimile*)
**COUNSEL FOR REPUBLIC BUSINESS CREDIT, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2019, a true and correct copy of the foregoing was served to the following counsel of record via electronic mail:

Jerry Kenneth Johnson, II
kjohnson@martinwaltonlaw.com
MARTIN WALTON LLP
1335 Space Park Drive, Suite C
Houston, Texas  77058
*Attorney for John Buttles*

Michael R. Rochelle
buzz.rochelle@romclaw.com
ROCHELLE MCCULLOUGH LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas  75201
*Attorney for John Buttles*

Jerry C. Alexander
alexanderj@passmanjones.com
PASSMAN & JONES, PC
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas  75270
*Attorney for Trustee James W. Cunningham*

Daniel J. Sherman
djsherman@syllp.com
SHERMAN & YAQUINTO
509 N. Montclair Avenue
Dallas, Texas  75208-5498
*Attorney for Trustee James W. Cunningham*

Andrew Sommerman
asommerman@textrial.com
Sean McCaffity
smccaffity@textrial.com
SOMMERYMAN & QUESADA, L.L.P.
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas  75219
*Attorneys for Trustee James W. Cunningham*

*/s/ Richard A. Illmer*
Richard A. Illmer