**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § § | |
| BAILEY TOOL & MANUFACTURING COMPANY, et al. | § § § § | Case No. 16-30503-bjh7<br>Chapter 7 |
| Debtors. | § § § | |
| | § § | |
| BAILEY TOOL & MANUFACTURING COMPANY, HUNT HINGES, INC. and CAFARELLI METALS, INC., | § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Adv. No. 16-03025-bjh |
| REPUBLIC BUSINESS CREDIT, LLC, | § § § | |
| Defendant and Counter-Plaintiff, | § | |

**DEFENDANT REPUBLIC BUSINESS CREDIT, LLC'S MOTION FOR SUMMARY JUDGMENT AGAINST JOHN BUTTLES AND MEMORANDUM IN SUPPORT**

Respectfully submitted,

By:  */ s / Richard A. Illmer*
Richard A. Illmer
State Bar No. 10388350
Alex E. Brakefield
State Bar No. 24105523
**HUSCH BLACKWELL LLP**
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
214.999.6100
214.999.6170 *facsimile*
Rick.Illmer@huschblackwell.com
Alex.Brakefield@huschblackwell.com
***Counsel for Republic Business Credit, LLC***

DocID: 4844-3089-6300.3

**Table of Contents**

Page

I. STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................... 1

    A. The Purchase Agreement ................................................................................................ 1

    B. RBC had no Obligation to Advance 90%; the Advance Amount is Discretionary and the Advance Rate is up to 90% ............................................................................... 2

    C. RBC has the Right to Collect Directly from the Account Debtors ............................. 2

    D. Merger Clause; No Reliance on Oral Representations................................................ 3

    E. Debtors' Continuing Obligations ................................................................................... 4

    F. Debtors' default. ............................................................................................................. 4

    G. Failed attempts to reach a settlement agreement......................................................... 4

II. SUMMARY JUDGMENT STANDARD .......................................................................... 5

III. ARGUMENT AND AUTHORITIES................................................................................. 6

    A. Fraud – Count 1; Negligent Misrepresentation – Count 6 .......................................... 6

    B. Fraud in a Real Estate Transaction – Count 2............................................................. 8

    C. Tortious Interference with a Prospective Contract – Count 3.................................... 9

    D. Tortious Interference with an Existing Contract – Count 4 ..................................... 10

    E. Breach of Contract - Count 5 ....................................................................................... 10

    F. Accounting – Count 7 ................................................................................................... 12

    G. Exemplary Damages – Count 9................................................................................... 12

    H. Attorneys' Fees and Expenses and Costs of Court – Count 10................................. 13

IV. CONCLUSION................................................................................................................... 13

## Table of Authorities

**Page**

**Cases**

*Anderson v. Liberty Lobby Inc.*,
   477 U.S. 242 (1986) ................................................................................................................ 5

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed 2d 265 (1986) ......................................................... 5

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
   417 S.W.3d 909 (Tex. 2013) .................................................................................................. 9

*Collins v. Gospocentric Records*,
   2001 W.L. 194985 (2001) .................................................................................................... 12

*Douglass v. United Services Auto. Association*,
   79 F.3d 1415 (5th Cir. 1996) ................................................................................................. 6

*Fontenot v. Upjohn Co.*,
   780 F.2d 1190 (5th Cir. 1986) .............................................................................................. 5

*Forest Oil Corp. v. McAllen,*
   268 S.W.3d 51 (Tex. 2008) ................................................................................................... 6

*Ginn v. NCI Bldg. Systems, Inc.*,
   472 S.W.3d 802 (Tex. App. 2015) ....................................................................................... 8

*Green International, Inc. v. Solis*,
   951 S.W.2d 384 (Tex. 1997) ............................................................................................... 13

*Hunt Oil Co. v. Moore,*
   656 S.W.2d 634 (Tex. App. 1983) ..................................................................................... 12

*Hutchings v. Chevron USA, Inc.*,
   862 S.W.2d 752 (Tex. App. 1993) ..................................................................................... 12

*Marquis Acquisitions, Inc. v. Steadfast Ins. Co.*,
   409 S.W.3d 808 (Tex. App. 2013) ..................................................................................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .............................................................................................................. 5

*McCallum Highlands, Ltd. v. Washington Capital Dus Inc.*,
   66 F.3d 89 (5th Cir. 1995) .................................................................................................... 6

*OAIC Commercial Assets v. Stonegate Village,*
  234 S.W.3d 726 (Tex. App. 2007)................................................................................... 11

*Olabisiomotosho v. City of Houston*,
  185 F.3d 521 (5th Cir. 1999) ............................................................................................ 6

*Pagosa Oil & Gas, L.L.C. v. Marrs & Smith Partnership*,
  323 S.W.3d 203 (Tex. App. 2010) .................................................................................. 11

*Prudential Insurance v. Financial Review Service*,
  29 S.W.3d 74 (Tex. 2000)............................................................................................... 10

*Richardson v. First National Life Ins. Co.*,
  419 S.W.2d 836 (Tex. 1967)........................................................................................... 12

*Schlumberger Technology Corp. v. Swanson*,
  959 S.W.2d 171 (Tex. 1997)............................................................................................. 6

*Siddiqui v. Fancy Bites, LLC,*
  No. 14-14-00384-CV (Tex. App. July 26, 2016)............................................................... 7

*Sneed v. Webre*,
  465 S.W.3d 169 (Tex. 2015).............................................................................................. 7

*TFW Management v. Westwood Shores Prop.*,
  79 S.W.3d 712 (Tex. App. 2002)..................................................................................... 12

*Triple Tee Golf, Inc. v. Nike, Inc.*,
  618 F. Supp. 2d 586 (N.D Tex. 2009) ............................................................................. 12

*VPI Holding Co. v. Success Reserve USA LLC*,
  No. 3:12-CV-3785-N, 2014 WL 12584331 (N.D. Tex. Dec. 2, 2014)............................... 5

*Wingate v. Hajdik*,
  795 S.W.2d 717 (Tex. 1990).............................................................................................. 7

*Zorrilla v. Aypco Construction II, LLC*,
  469 S.W.3d 143 (Tex. 2015).............................................................................................. 6

**Rules & Regulations**

Northern District of Texas Bankruptcy Local Rule 56 ..................................................................... 1

Northern District of Texas Bankruptcy Local Rule 7 ....................................................................... 1

TEX. CIV. PRAC. & REM. CODE § 41.003............................................................................... 12

Tex. Bus. & Com. Code §27.01 ................................................................................................ 8

Tex. Bus. & Com. Code §27.01(a)(1) ........................................................................................ 8

Tex. Bus. & Com. Code §27.01(a)(2) ........................................................................................ 8

U.S. Code Title 28 § 636(b)(1) .................................................................................................. 6

Fed. R. Civ. P. 56 ...................................................................................................................... 1

Fed. R. Civ. P. 56(a) ................................................................................................................. 5

Fed. R. Civ. P. 56(c)(1) ............................................................................................................. 1

NOW COMES, Defendant and Counter-Plaintiff Republic Business Credit, LLC ("RBC") and, pursuant to Federal Rule of Civil Procedure 56, and Local Rules 7 and 56, files this its Motion for Summary Judgment Against Third Party Defendant John Buttles ("Buttles") and Memorandum in Support of Same and respectfully shows the Court as follows:

## I.   STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Pursuant to Fed. R. Civ. P. 56(c)(1), RBC contends that the following undisputed material facts support their Motion for Summary Judgment:

### A.   The Purchase Agreement

Debtors sold all Accounts to RBC.

2. On or about February 25, 2015, RBC and each of Plaintiffs Bailey Tool & Manufacturing Company ("Bailey Tool"), Hunt Hinges, Inc. ("Hunt"), and Cafarelli Metals, Inc. ("Cafarelli") (collectively, "Debtors") entered into a Revolving Inventory Loan and Security Agreement (the "Inventory Agreement") and an Agreement for Purchase and Sale dated February 25, 2015 (the "Purchase Agreement").[1] Under the Purchase Agreement, Debtors sold "all of [Debtors'] right, title and interest in and to [Debtors'] *now existing and herein after created Accounts*, together with all corresponding rights with respect thereto and proceeds thereof…."[2] The Purchase Agreement states, "[i]t is the intention of [Plaintiffs] and [RBC] that the sales of the Accounts constitute true and actual sales of the Accounts from [Plaintiffs] and [RBC]."[3] This court has already ruled that *all* of Debtor's Accounts from March 3, 2015 to November 5, 2016 were purchased by RBC.[4]

---

[1] App. 85-127 and Buttles' Depo. 97:22-104:14, App. 61-62.
[2] Purchase Agreement, ¶1.1, App. 87.
[3] Purchase Agreement, ¶1.5., App. 87.
[4] Report and Recommendation, [Dkt. 165], p. 6.

**B.    RBC had no Obligation to Advance 90%; the Advance Amount is Discretionary and the Advance Rate is up to 90%.**

3.    The Purchase Agreement does not require RBC to advance 90% of the amount of each Account sold to RBC.[5] Rather, RBC has an "option to pay to Seller (Debtors) an Advance for all Eligible Accounts…."[6] As set forth in Annex A of the Purchase Agreement, an Account may be ineligible for an advance if, for example, it was aged beyond 90 days or due from an Account Debtor that did not pay within invoice terms.[7]

4.    The Purchase Agreement also gives RBC the right to create a Reserve (as that term is defined in the Purchase Agreement) for Obligations (as that term is defined in the Purchase Agreement) that would otherwise be due RBC under the terms of the Purchase Agreement (the "Reserve").[8] RBC determines the amount and duration of the Reserve in its "sole and exclusive discretion."[9] The term "Obligation" is defined, in part, as "*all present and future* obligations owing by Seller to Purchaser...."[10] Among other things, the Debtors have the obligation to reimburse RBC for attorneys' fees incurred by RBC.[11] On the other hand, Debtors expressly waived any right to seek attorney's fees.[12]

**C.    RBC has the Right to Collect Directly from the Account Debtors**

5.    The Purchase Agreement entitles RBC to notify Debtors' Account Debtors that payment of accounts receivable shall be made directly to RBC.[13] RBC sent each Account Debtor a notice of notices of assignment ("NOA") advising that payments should be sent directly to

---

[5] Purchase Agreement, ¶ 2
[6] Purchase Agreement, ¶ 2; see also Buttles' Depo 141:22-142:1
[7] Purchase Agreement, Annex A, p. 1, Sec. C, App. 95.
[8] Purchase Agreement, Purchase Provisions, ¶ 4, App. 88.
[9] *Id.*
[10] Purchase Agreement, Annex A (emphasis added), App. 95.
[11] Purchase Agreement,¶ 10.4, App. 93 ("[Debtor] agrees to reimburse [RBC] for all reasonable attorney's fees, court costs and other expenses incurred by [RBC] arising under or related to this [Purchasing] Agreement").
[12] Purchase Agreement ¶ 12.2, App. 93.
[13] Purchase Agreement, ¶ 1.3.1, App. 87.

RBC.[14] Upon receipt of the NOA, Debtors' Account Debtors became obligated to remit payment to RBC.

### D. Merger Clause; No Reliance on Oral Representations.

6. In addition, the Purchase Agreement includes a "merger clause" in which Debtors expressly disclaimed reliance on oral representations:

> <u>Entire Agreement</u>. The Purchase Agreement contains the entire understanding of the Parties hereto and relating to the subject matter hereof and is the final and complete expression of their intent. No prior or contemporaneous negotiations, promises, agreements, covenants, or representations of any kind or nature, whether made orally or in writing have been made by the Parties, or any of them…it being the intention of the Parties hereto that in the event of any subsequent litigation, controversy, or dispute concerning the terms or provisions of this Purchase Agreement, no party shall be permitted to offer or introduce oral or extrinsic evidence concerning the terms and conditions hereof that are not included or referred to herein and not reflected in writing.[15]
>
> \*   \*   \*
>
> <u>Merger/No Reliance</u>. [Debtor] specifically acknowledges and agrees that [RBC] has not made and shall not at any time be deemed to have made and hereby disclaims any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future of by [RBC] except as specifically set forth herein. This Agreement is executed freely and voluntarily and without reliance upon any statement or representation of [RBC]…There are no and [Debtor] is not relying on any written or oral representations not expressly written in this Purchase Agreement.[16]

---

[14] Affidavit of Melissa Baines ("Baines Affidavit"), ¶ 6, App. 76.
[15] Purchase Agreement ¶ 12.2, App. 93.
[16] Purchase Agreement, ¶ 12.15, App. 94.

### E. Debtors' Continuing Obligations

7. Finally, Paragraph 8.4 of the Purchase Provisions provides that upon the termination of the Purchase Agreement, the terms of the Purchase Agreement continue to be effective until all Obligations of the Debtors have been completed and satisfied in full.[17]

### F. Debtors' default.

8. On July 10, 2015, RBC sent the Debtors a Notice of Default letter, describing the Debtors' numerous material breaches of the Purchase Agreement.[18]

9. On September 17, 2015, RBC sent the Debtors a Notice of Default and Demand for Payment letter, which payment demand was required to be satisfied by the Debtors on or before September 21, 2015.[19]

### G. Failed attempts to reach a settlement agreement

10. In late September, 2015, the parties appeared to be on the verge of a negotiated parting of the ways.[20] For several days, the parties exchanged draft forbearance agreements, which included a proposed provision for RBC to receive $225,000 from the sale of Buttles' home.[21] On or about October 1, 2015, counsel to RBC sent counsel to the Debtors an unsigned draft forbearance agreement, expressly subject to RBC's review in comment in all respects.[22] The terms were not finalized and remained subject to additional changes, as expressly stated in the email.[23] Despite the fact that no forbearance agreement had been executed, Buttles directed his

---

[17] Purchase Agreement, ¶ 8.4, App. 91.
[18] Baines Aff. ¶ 7, App. 76 and App. 78-81.
[19] Baines Aff. ¶ 8, App. 76 and App. 78-81.
[20] *See* App. 128 – 191.
[21] *See id.*; *see also* Unexecuted Draft Forbearance Agreement, ¶ 4.3, App.181. App.
[22] Unexecuted Draft Forbearance Agreement, ¶ 4.3, App.181.
[23] App. 147 ("I attach a draft of the Forbearance Agreement. Please note that in the interest of time, this is being distributed to Republic Business Credit, LLC simultaneously and therefore remains subject to my client's review and comment in all respects.").

title company to send $225,000 to RBC upon the close of the sale of his home.[24] In the absence of a finalized forbearance agreement, RBC applied the payment to the debts outstanding.[25] Debtors never executed the forbearance agreement.[26]

## II. SUMMARY JUDGMENT STANDARD

11. A trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986). When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). "When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense." *VPI Holding Co. v. Success Res*. USA LLC, No. 3:12-CV-3785-N, 2014 WL 12584331, at *2 (N.D. Tex. Dec. 2, 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

12. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "conclusory allegations, speculation, and unsubstantiated assertions" will not

---

[24] Buttles Depo, 241:21-242:2, App. 200.
[25] *See* RBC's Response to Debtors' Partial Motion for Summary Judgment, Aff. of Melissa Baines ("2017 Baines Aff."), ¶ 13, [Dkt. 77-1], incorporated into this pleading by reference.
[26] *See id.*

satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## III. ARGUMENT AND AUTHORITIES

### A. Fraud – Count 1; Negligent Misrepresentation – Count 6

13. A common-law fraud claim requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury. *Zorrilla v. Aypco Constr. II, LLC,* 469 S.W.3d 143, 153 (Tex. 2015) (internal citations omitted). Fraudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made. *Id*. Contractual provisions negating reliance are enforceable under Texas law.

14. Parties may negate fraudulent inducement claims based upon contractual disclaimers where the parties' intent is clear and specific. *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997). As the Supreme Court noted in *Forest Oil*:

> After the fact protests of misrepresentation are easily lodged, and parties who contractually promise not to rely on extra contractual statements – more than that, promise that they have not relied upon such statements – should be held to their word. Parties should not sign contracts while crossing their fingers behind their backs…If disclaimers of reliance cannot ensure finality and preclude post-deal claims for fraudulent inducement, then freedom of contract, even among the most knowledgeable parties advised by their most knowledgeable legal counsel, is grievously impaired.

*Forest Oil Corp.,* 268 S.W.2d at 62.

15. First, Buttles does not have standing to sue on the Purchase Agreements for fraudulent or negligent misrepresentations allegedly made to the Debtors as any purported injury resulted to the Debtors. *See Siddiqui v. Fancy Bites, LLC,* 504 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). ("[A] member of a limited liability company lacks standing to assert claims individually when the cause of action belongs to the company.")(internal citation omitted); *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990), *superseded by statute on other grounds*, *Sneed v. Webre*, 465 S.W.3d 169 (Tex. 2015) ("A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong.")

16. But even if Buttles did have standing, the Purchase Agreement contains an enforceable disclaimer of reliance and representations.[27] Furthermore, the statements to Debtors that Buttles claims were misrepresentations were only vague promises of future performance and goodwill:

> Q: …what misrepresentations, if any were made at this first meeting?
>
> A: Well, just that you [RBC] would be a reliable factor and help us conduct our affairs and migrate back to a commercial banking relationship that we were interested in pursuing with Regions. And, that you would act honorably and faithfully and execute your contract with us, and we would conduct the business and, you know, both honor our obligations.
>
> Q: Anything else?
>
> A: Any other misrepresentations?
>
> Q: At this first meeting?

---

[27] Purchase Agreement ¶ 12.2, App. 94; Purchase Agreement, ¶ 12.15, App. 94.

   A:  I would say if misrepresentations were made and that was one, then that it was conducted at that first meeting. And I don't recall any others right now.[28]

17. Because Buttles does not have standing to assert a claim for misrepresentations allegedly made to Debtors, there cannot be a viable claim for fraud, fraud in the inducement, or negligent misrepresentation.

### B. Fraud in a Real Estate Transaction – Count 2

18. To succeed on a claim under Texas Business & Commerce Code § 27.01, a Plaintiff must prove: (1) there was a transaction involving real estate or stock; (2) during the transaction, the defendant: (i) made a false representation of fact; (ii) made a false promise; or (iii) benefited by not disclosing that third party's representation or promise was false; (3) the false representation or promise was made for the purpose of inducing the Plaintiff to enter into a contract; (4) the Plaintiff relied on the false representation or promise by entering into the contract; and (5) the reliance caused the Plaintiff injury. Tex. Bus. & Com. Code §27.01; *Ginn v. NCI Bldg. Sys.*, 472 S.W.3d 802, 823 (Tex. App.—Houston [1st Dist.] 2015).

19. With respect to § 27.01(a)(1), any statement RBC made with respect to a mortgage on Buttles homestead was not a representation of fact, but rather a representation of law. With respect to § 27.01(a)(2), as set forth more fully below, RBC made no such promise of entering into a settlement agreement.[29]

20. Furthermore, Buttles did not suffer any injury. To the contrary, Buttles sold his home for more than list price,[30] and RBC applied the $225,000 from the proceeds to Debtors'

---

[28] Buttles' Depo, 92:25-93:14.
[29] *See infra*, Section E.
[30] Buttles' Depo, 197:17 – 198:3, App. 199.

overadvance.[31] Because Buttles had personally guaranteed the overadvance, a reduction in this balance was reasonably equivalent value.[32]

### C. Tortious Interference with a Prospective Contract – Count 3[33]

21. To succeed on a claim for tortious interference with a prospective contract, a Plaintiff must prove: (1) there was a reasonable probability that the Plaintiff would have entered into a business relationship with a third person; (2) the Defendant intentionally interfered with the relationship; (3) the Defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the Plaintiff's injury; (5) the Plaintiff suffered actual damage or loss. *Coinmach Corp. v. Aspenwood Apartment Corp.,* 417 S.W.3d 909 (Tex. 2013)..

22. Buttles identifies the prospective contract with which RBC allegedly interfered as being the "prospective contract for the sale or merger of Buttles' business to TEAM Partners".[34] To the extent that there was any level of preliminary interest from TEAM Partners, such interest was directed towards Debtors – not Buttles.[35] Buttles does not have standing to complain about an alleged interference with a potential relationship of Debtors.

23. Furthermore, putting aside Buttles' lack of standing, the potential for a business relationship between Debtors and TEAM Partners was far from reasonably probable. Indeed, Buttles admitted at the time that that any prospective contract with TEAM Partners was a longshot. ("I am realistic about the prospects for this, less than 50 percent").[36] Nevertheless, when presented with the possibility of a future relationship between Debtors and TEAM

---

[31] 2017 Baines Aff., ¶ 13, Dkt. 77-1.
[32] See Personal Guaranty, App. 192 – 198.
[33] Buttles' Fourth Amended Counterclaim [Dkt. 225] misnumbered this cause of action as "Count 4."
[34] Buttles' Fourth Amended Counterclaim, ¶142.
[35] See July 7, 2015 Allen Frederic email, App. 72-7
[36] Buttles' Depo, 168:1 – 170:4, App. 63-64.

Partners, RBC responded positively to the news and encouraged Debtors' to consider it ("While [the TEAM Partners letter] is encouraging, like it states, it is preliminary…It is, however, encouraging, and I would certainly explore this opportunity earnestly.").[37]

24.     Buttles lacks standing and the potential relationship between Debtors and TEAM Partners was not likely to come to fruition.  Accordingly, RBC is entitled to summary judgment on this count.

### D.     Tortious Interference with an Existing Contract – Count 4

25.     To succeed on a claim for tortious interference with an existing contract, a Plaintiff must prove:  (1) the Plaintiff had a valid contract; (2) the Defendant willfully and intentionally interfered with the contract; (3) the interference proximately caused the Plaintiff's injury; and (4) the Plaintiff incurred actual damage or loss. *Prudential Ins. v. Financial Rev. Serv.*, 29 S.W.3d 74, 77 (Tex. 2000).

26.     Buttles seems to allege that RBC interfered with the contract for the sale of his homestead because RBC received $225,000 of the proceeds from the sale of the home upon closing.[38]  However, Buttles admits that he directed the title company to release the funds to RBC.[39]  Furthermore, Buttles, who admits that his home sold above list price, lacks any actual injury or loss.[40]

### E.     Breach of Contract - Count 5

27.     In order to succeed on a breach of contract claim a Plaintiff must prove:  (1) there is a valid enforceable contract; (2) the Plaintiff is a property party to sue for breach of the contract; (3) the Plaintiff performed, tendered performance of, or was excused from performing

---

[37] See July 7, 2015 Allen Frederic email, App. 72-73.
[38] Buttles' Fourth Amended Counterclaim, ¶ 147.
[39] Buttles Depo, 241:21-242:2, App. 200.
[40] Buttles' Depo, 197:17 – 198:3, App. 199.

its contractual obligations; (4) the Defendant breached the contract; (5) the Defendant's breach caused injury to Plaintiff. *Marquis Acquisitions, Inc. v. Steadfast Ins. Co.*, 409 S.W.3d 808, 813-14 (Tex.App.—Dallas 2013, no pet.).

28. Furthermore, "[t]o establish its standing to assert a breach of contract cause of action, a party must prove its privity to the agreement, or that it is a third-party beneficiary." *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 210 (Tex. App. 2010), citing *OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.*, 234 S.W.3d 726, 738 (Tex.App.--Dallas 2007, pet. denied). "For standing purposes, privity is established when the plaintiff proves the defendant was a party to an enforceable contract with either the plaintiff, or a third party who assigned its cause of action to the plaintiff." *Id.*, *Stonegate Village, L.P.*, 234 S.W.3d at 738.

29. RBC is entitled to summary judgment on this cause of action because the "contract" that Buttles alleges RBC breached does not exist. Buttles asserts that the "contract" between RBC and Buttles is reflected by a series of settlement and negotiation emails exchanged between the Debtors' representative and RBC's representatives.[41] owever, the correspondence is clearly insufficient to reflect a meeting of the minds, as demonstrated by the fact that the draft forbearance agreements were circulated for comment and review but were never executed.[42] s a matter of law, the correspondence is nothing more settlement negotiations, and is not a valid and enforceable agreement.

30. Because the "settlement agreement" is not a valid and enforceable contract between Buttles and RBC, RBC is entitled to summary judgment on this count.

---

[41] Buttles' Fourth Amended Counterclaim,¶ 153(a).
[42] App. 128 – 191; *see also* 2017 Baines Aff., ¶ 13, Dkt. 77-1.

### F. Accounting – Count 7

31. Buttles asserts a cause of action of for accounting. An accounting is not an independent cause of action. *Triple Tee Golf, Inc. v. Nike, Inc.,* 618 F. Supp. 2d 586, 599 n.15 (N.D. Tex. 2009) (dismissing the accounting "claim" because it "has no status independent of plaintiff's other claims"); *Collins v. GospoCentric Records*, No. 3:00-CV-1813-H, 2001 U.S. Dist. LEXIS 7357, at *1 (N.D. Tex. Feb. 22, 2001) (noting that "[a]n accounting is an equitable remedy, not an independent cause of action"). Rather, an accounting is instead an equitable remedy provided in connection with a breach of contract or breach of fiduciary duty claim. See, e.g., *T.F.W. Mgmt. v. Westwood Shores Prop. Owners Association*, 79 S.W.3d 712, 717 (Tex. App. Houston [14th Dist.] 2002, pet. denied) (citing *Hunt Oil Co. v. Moore,* 656 S.W.2d 634 (Tex. App.-Tyler 1983, writ red n.r.e.)). Moreover, an equitable accounting is only proper when the facts and accounts presented are so complex, adequate relief may not be obtained at law. *Id.* (citing *Hutchings v. Chevron U.S.A.*, 862 S.W.2d 752, 762 (Tex. App. El Paso 1993, writ denied); *Richardson v. First Nat'l Life Ins. Co.*, 419 S.W.2d 836, 838 (Tex. 1967)). However, where a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, no accounting is necessary. *T.F.W. Mgmt.,* 79 S.W.3d at 718 (citing *Hutchings,* 862 S.W.2d at 762).

32. Accordingly, Buttles' claim for an accounting fails as a matter of law and summary judgment is appropriate.

### G. Exemplary Damages – Count 9

33. Exemplary damages under Texas Civil Practice and Remedies Code § 41.003 may only be awarded where the Plaintiff can prove by clear and convincing evidence that the harm

with respect to which it seeks recovery of exemplary damages resulted from fraud, malice, or gross negligence.

34. Buttles has no evidence that RBC acted fraudulently, with malice, or with gross negligence, and this Court should, therefore, enter summary judgment against Buttles on this count.

### H.  Attorneys' Fees and Expenses and Costs of Court – Count 10

35. To recover attorneys' fees, Buttles must prevail on a cause of action for which attorneys' fees are recoverable and recover damages. *See, e.g., Green Int'l, Inc. v. Solis*, 951 S.W.2d 384 (Tex. 1997).  Because Buttles has no viable causes of action and he is not entitled to damages, he cannot recover attorneys' fees.  Accordingly, RBC is entitled to summary judgment on Buttles' claim for attorneys' fees, expenses and costs of court.

## IV. CONCLUSION

36. For the reasons set forth above, RBC respectfully requests the Court grant summary judgment in favor of RBC on Buttles' claims.

Dated: November 15, 2019

Respectfully submitted,

By:  */s/ Richard A. Illmer*
Richard A. Illmer
State Bar No. 10388350
Rick.Illmer@huschblackwell.com
Alex E. Brakefield
Bar No. 24105523
Alex.Brakefield@huschblackwell.com

**HUSCH BLACKWELL LLP**
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 (*facsimile*)
*COUNSEL FOR REPUBLIC BUSINESS CREDIT, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2019, a true and correct copy of the foregoing was served to the following counsel of record via electronic mail:

Jerry Kenneth Johnson, II
kjohnson@martinwaltonlaw.com
MARTIN WALTON LLP
1335 Space Park Drive, Suite C
Houston, Texas 77058
*Attorney for John Buttles*

Michael R. Rochelle
buzz.rochelle@romclaw.com
ROCHELLE MCCULLOUGH LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
*Attorney for John Buttles*

Jerry C. Alexander
alexanderj@passmanjones.com
PASSMAN & JONES, PC
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
*Attorney for Trustee James W. Cunningham*

Daniel J. Sherman
djsherman@syllp.com
SHERMAN & YAQUINTO
509 N. Montclair Avenue
Dallas, Texas 75208-5498
*Attorney for Trustee James W. Cunningham*

Andrew Sommerman
asommerman@textrial.com
Sean McCaffity
smccaffity@textrial.com
SOMMERMAN & QUESADA, L.L.P.
3811 Turtle Creek Boulevard, Suite 1400,
Dallas, Texas 75219
*Attorneys for Trustee James W. Cunningham*

*/s/ Richard A. Illmer*
Richard A. Illmer