# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................... 5

II. ARGUMENT AND AUTHORITIES ............................................................... 6

    A.  Section 12.6 Of The Purchase Agreement Is Dispositive of Debtors' Fiduciary Duty Claim. ................................................................................................ 6

    B.  There Is No Duty Of Good Faith Owed To Debtors. .............................. 6

    C.  Partnership Is Negated As A Matter Of Law. ......................................... 8

    D.  Debtors' Claims For Fraud, DTPA Violations, And Negligent Misrepresentation Are Negated As A Matter Of Law. ......................................................... 8

    E.  Debtors' Business Disparagement Claim Fails As A Matter Of Law. ................ 11

    F.  Debtors Mischaracterize The Court's Declaratory Judgments. ........................ 12

    G.  At A Minimum, RBC Is Entitled to Summary Judgment To The Extent Debtors' Claims Are Based On Accounts Created Before November 5, 2015. .................. 16

    H.  Breach of Contract ................................................................................ 17

    I.  Tortious Interference with Prospective Contract. .................................. 18

    J.  Interference with Debtors in BK ........................................................... 18

    K.  Attorneys' fees are contractually barred. .............................................. 19

    L.  Consequential Damages are contractually barred. ................................ 19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ACS Inv'rs, Inc. v. McLaughlin*,
   943 S.W.2d 426 (Tex. 1997) ................................................................ 16

*Apache Corp. v. Dynegy Midstream Services, Ltd. P'ship*, 214 S.W.3d 554 (Tex. App.—
   Houston [14th Dist.] ................................................................................ 7

*Condrey v. SunTrust Bank of Georgia*,
   429 F.3d 556 (5th Cir. 2005) ................................................................ 17

*Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*,
   882 F.3d 574 (5th Cir. 2018) ................................................................ 17

*Hux v. S. Methodist Univ.*,
   819 F.3d 776 (5th Cir. 2016) .................................................................. 7

*In re Lipsky*,
   460 S.W.3d 579 (Tex. 2015) .................................................................. 11

*In re Springswoods Joint Venture*,
   551 B.R. 283 (S.D.Tex. Bkr. 2016) ........................................................ 8

*McCullough v.  Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871 (Tex. App.—Dallas,
   2014, pet. denied) ............................................................................... 16

*Omnitech Intern., Inc., v. Clorox Co.*,
   11 F.3d 1316 (5th Cir. 1994) ............................................................ 9, 10

*Reagan v. Guardian Life Insurance Co.*,
   166 S.W.2d 909 (Tex. 1942) ................................................................ 11

*Saucedo v. Horner*, 329 S.W.3d 825 (Tex. App.—El Paso 2010, no pet.) .................................... 7

*Schlumberger Technology Corp. v. Swanson*,
   959 S.W.2d 171 (Tex. 1997) ................................................................ 10

*Shanks v. AlliedSignal, Inc.*,
   169 F.3d 988 (5th Cir. 1999) ................................................................ 11

*Transp. Insurance Co. v. Faircloth*,
   898 S.W.2d 269 (Tex.1995) .................................................................... 7

*Vulcan Capital Corp. v. Miller Energy Reserve, Inc.*,
3:14-CV-3283-B, 2015 WL 293839 (N.D. Tex. Jan. 22, 2015) ................................................. 8

*Wheeler v. Yettie Kersting Mem'l Hosp.*, 866 S.W.2d 32 (Tex.App.–Houston [1st Dist.] ............ 7

*Whitaker v. Bank of El Paso*, 850 S.W.2d 757 (Tex. App.—El Paso 1993, no writ).................. 16

**Statutory Authorities**
La. Civ. Code Ann. art. 2046 (1987) .......................................................................................... 17

Tex. Bus. & Com. Code § 1.304................................................................................................... 7

Richard A. Illmer
State Bar No. 10388350
**HUSCH BLACKWELL LLP**
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
Telephone: 214.999.6100
Facsimile: 214.999.6170

Vickie L. Driver
State Bar No. 24026886
**CROWE & DUNLEVY, P.C.**
1919 McKinney Avenue, #100
Dallas, Texas 75201
Telephone: 214.420.2163
Facsimile: 214.736.1762
*Counsel for Republic Business Credit, LLC*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **BAILEY TOOL &** | § | **Case No. 16-30503-bjh7** |
| **MANUFACTURING COMPANY, et al.** | § | **Chapter 7** |
| | § | |
| **Debtors.** | § | |
| ———————————————— | § | ———————————————— |
| | § | |
| **BAILEY TOOL &** | § | |
| **MANUFACTURING COMPANY,** | § | |
| **HUNT HINGES, INC. and** | § | |
| **CAFARELLI METALS, INC.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **Adv. No. 16-03025-bjh** |
| | § | |
| **REPUBLIC BUSINESS CREDIT, LLC,** | § | |
| | § | |
| **Defendant and Counter-Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| **BAILEY TOOL &** | § | |
| **MANUFACTURING COMPANY,** | § | |
| **HUNT HINGES, INC. and** | § | |
| **CAFARELLI METALS, INC.,** | § | |

|                                                    |     |
| -------------------------------------------------- | --- |
| **Counter-Defendants.**                            | §   |
|                                                    | §   |
|                                                    | §   |
| _____           | §   |
| **REPUBLIC BUSINESS CREDIT, LLC,**                 | §   |
|                                                    | §   |
| **Third-Party Plaintiff,**                         | §   |
|                                                    | §   |
| **v.**                                             | §   |
|                                                    | §   |
| **JOHN BUTTLES, TENNECO, INC.,**                   | §   |
| **TRELLEBORG AUTOMOTIVE**                          | §   |
| **USA, INC.**                                      | §   |
|                                                    | §   |
| **Third-Party Defendants.**                        | §   |

---

**REPUBLIC BUSINESS CREDIT, LLC'S REPLY TO TRUSTEE'S RESPONSE [ADV. DKT. 247] TO RBC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEBTORS [ADV. DKT. 235]**

---

Republic Business Credit, LLC ("RBC") makes and files this its Reply to the response of James W. Cunningham, Chapter 7 Trustee for Bailey Tool & Manufacturing Company, Hunt Hinges, Inc., and Cafarelli Metals, Inc. (collectively, "Debtors") filed in opposition to RBC's Motion for Partial Summary Judgment (the "Motion").

## I.    INTRODUCTION

RBC filed its Motion for the purpose of narrowing the issues to be tried.  The Motion focuses on various legal issues raised by the Debtors' Fourth Amended Complaint where the Court has already ruled on the interpretation of the Purchase Agreement (the "Agreement") (for example, where the court ruled that RBC purchased all of Debtors' account receivables during the term of the Agreement, not just those that Debtors listed on a schedule) and where facts are undisputed (for example, where the Purchase Agreement affirtmatively states that RBC will not owe a fiduciary duty and that Debtors will not rely on alleged representations outside the

Agreement).  In each instance, the Court should dispose of those claims that are untenable as a

matter of law in order to streamline the presentation of evidence at trial.

## II.    ARGUMENT AND AUTHORITIES

### A.    Section 12.6 Of The Purchase Agreement Is Dispositive of Debtors' Fiduciary Duty Claim.

The parties affirmatively agreed in §12.6 of the Purchase Agreement that there would be

no fiduciary duty. Specifically, § 12.6 states:

> Relationship of Parties. Seller acknowledges that the relationship under
> the Purchase Agreement is principally that of seller and purchaser and that
> there is not now, and Seller will at no time seek or attempt to establish,
> any fiduciary or confidential relationship between Purchaser and Seller.
> Seller waives any right to assert, now or in the future, the existence or
> creation of any fiduciary or confidential relationship between Purchaser
> and Seller in any action or proceeding, whether by way of claim,
> counterclaim, cross claim or otherwise.

Where the parties have agreed that no fiduciary duty exists, there can be no breach of

fiduciary duty.  The Debtors' reliance on Article 2004 of the Louisiana Civil Code is misplaced.

Article 2004 prohibits contractual clauses that "exclude or limit liability for intentional or gross

fault." Section 12.6 of the Purchase Agreement does not conflict with Article 2004 because it

does not exclude or limit liability for intentional or gross fault; rather it makes clear that there is

no fiduciary duty on which such liability can be based.

### B.    There Is No Duty Of Good Faith Owed To Debtors.

Debtors previously admitted that Texas law applies to all of their claims other than

contract interpretation. Specifically, Debtors asserted "[t]he choice of law provision is limited on

its face to governance and construction of the Factoring Agreement.  Torts and other non-

contract causes of action are therefore not affected by the choice of law provision."[1]  Debtors'

"Breach of Duty of Good Faith and Fair Dealing" claim (Count 15) is a tort under Texas law.[2]

Contrary to Debtors' assertion at ¶ 182 of the Fourth Amended Complaint, not all

contracts are "governed by an implied covenant of good faith and fair dealing." Texas courts

acknowledge an implied duty where there is a special relationship between the parties with

certain characteristics, including "long-standing relations, an imbalance of bargaining power, and

significant trust and confidence shared by the parties".[3] In addition, "the relationship must exist

before and apart from the contract or agreement that forms the basis of the controversy."[4]

Clearly, no such relationship exists between Debtors and RBC. Indeed, Texas courts have been

reluctant to infer a duty of good faith in any contractual relationship other than the relationship

between an insurer and its insured.[5]

Furthermore, even if Tex. Bus. & Com. Code § 1.304 imposes a duty of good faith in the

performance of the Purchase Agreement, the duty does not give rise to an independent cause of

action wholly separate and apart from breach of contract:

> The failure to act in good faith under the UCC, however, does not state an
> independent cause of action because the duty of good faith and fair dealing
> is aimed at making effective the agreement's promises. The UCC defines
> duties that grow out of specific contract terms and obligations. In the
> absence of a specific duty or obligation in the contract to which the good-
> faith standard can be tied, the obligation of good faith under the UCC will
> not support a claim for damages.[6]

---

[1] Debtors' Fourth Amended Complaint, n. 18.

[2] *See Saucedo v. Horner*, 329 S.W.3d 825, 831 (Tex. App.—El Paso 2010, no pet.) ("A claim for breach of duty of good faith and fair dealing is a tort action that arises from an underlying contract.")(internal citation omitted); *see also Hux v. S. Methodist Univ.,* 819 F.3d 776, 781 (5th Cir. 2016) ("Under Texas law, the question of whether there is a tort duty of good faith and fair dealing in a particular circumstance is initially a question of law.").

[3] *Hux*, 819 F.3d at 781 (internal quotation omitted).

[4] *Id.* (citing *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex.1995)).

[5] *See Wheeler v. Yettie Kersting Mem'l Hosp*., 866 S.W.2d 32, 52 (Tex.App.–Houston [1st Dist.] 1993, no writ) (collecting cases).

[6] *Apache Corp. v. Dynegy Midstream Services, Ltd. P'ship*, 214 S.W.3d 554, 563 (Tex. App.—Houston [14th Dist.] 2006) (internal citations omitted), aff'd in part, rev'd in part on other grounds, 294 S.W.3d 164 (Tex. 2009); *see also*

So, RBC is entitled to summary judgment on Debtors' "bad faith" tort claim.

### C.    Partnership Is Negated As A Matter Of Law.

Debtors do not dispute that there was no agreement between RBC and Debtors to share profits and losses, but this is not the only reason that, as a matter of law, there is no partnership between RBC and Debtors. RBC's motion is also based on the undisputed fact that RBC had no right of control over Debtors' businesses.[7]

Throughout their Complaint and Response to RBC's Motion, the Debtors complain that RBC unlawfully "controlled" their business.[8] Indeed the alleged instances of "control" set forth in paragraph 82 of Debtors' Response are the same acts that Debtors complain are wrongful.[9] RBC adamantly disputes any allegation that it controlled Debtors' businesses; but Debtors' claim that RBC had no right to control their business is inconsistent with Debtors' claim that there was a partnership between Debtors and RBC. The fact that Debtors admit there was no agreement to share profits and losses and no agreement for RBC to control the Debtors' business is dispositive of the partnership claim. [10]

### D.    Debtors' Claims For Fraud, DTPA Violations, And Negligent Misrepresentation Are Negated As A Matter Of Law.

To prevail on claims for fraud, negligent misrepresentation, or violations of the DTPA, Debtors must establish that they relied on a misrepresentation of RBC. This reliance is

---

*Vulcan Capital Corp. v. Miller Energy Res., Inc.*, 3:14-CV-3283-B, 2015 WL 293839, *9 (N.D. Tex. Jan. 22, 2015) (citing *Apache Corp.* with approval).
[7] RBC's Motion for Partial Summary Judgment, ¶¶18-19.
[8] *See, e.g.,* Debtors' Response, ¶¶23-28.
[9] Compare Debtors' Response ¶¶26-30 and ¶ 82.
[10] *See also In re Springswoods Joint Venture*, 551 B.R. 283, 292 (S.D.Tex. Bkr. 2016) (declining to grant summary judgment where there were fact issues on two of the five relevant partnership factors, but warning that "[a]s a practical matter, the Court is unaware of any case applying Texas law in which a court has found a partnership to exist without an agreement to share either profits or losses, and no evidence of capital or property contributions. The Court has grave doubts about the wisdom of expending further resources on this matter. If RHHC persists in light of this opinion, it should be prepared to consider the implications of § 303(i) of the Bankruptcy Code.")

foreclosed as a matter of law because §12.15 of the Purchase Agreement contains the following

merger clause:

> <u>Merger/No Reliance</u>. Seller specifically acknowledges and agrees that Purchaser has not made and shall not at any time be deemed to have made and hereby disclaims any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future of by Purchaser except as specifically set forth herein. This Agreement is executed freely and voluntarily and without reliance upon any statement or representation of Purchaser or any of Purchaser's attorneys, agents, or other representatives in connection therewith except as set forth herein. There are no and Seller is not relying on any written or oral representations not expressly written in this Purchase Agreement.

Section 12.15 makes clear that RBC cannot be deemed to have made, at any time in the

past, present, or future, any representations of any kind except those that are expressly set forth

in the Purchase Agreement. This "merger clause" forecloses reliance by Debtors on any

representations outside the scope of the agreement.

The effect of such clauses is recognized by Texas and Louisiana courts alike. For

example, in *Omnitech Intern., Inc., v. Clorox Co.*, the Court held that where the merger clause at

issue required changes to be made in writing, it was "unreasonable as a matter of law" for the

plaintiff to rely on any oral representations by defendants.[11] In reaching this conclusion, the

Court noted that while a merger clause does not *per se* foreclose parole evidence of an oral

modification, the circumstances in that case, including the fact that the agreement had been

negotiated by both parties, made it clear that the merger clause accurately reflected the parties'

intentions.[12]

---

[11] *Omnitech Intern., Inc., v. Clorox Co.*, 11 F.3d 1316, 1330 (5th Cir. 1994).
[12] *Id*. at 1328-1329.

In *Omnitech*, Plaintiff and Defendant executed a letter of intent and non-disclosure agreement, which contained a merger clause. In its petition, Plaintiff stated that in addition to the express terms of those agreements, Defendant orally represented that it would not enter the insecticide category without including Plaintiff.[13] Plaintiff sued when Defendant did enter the insecticide industry even though the potential joint venture with Plaintiff had fallen through.[14] Defendant responded that Plaintiff's reliance on any oral representation was precluded by the merger clause. The Court agreed with Defendant, concluding that it was "unreasonable as a matter of law" for Plaintiff to rely on the oral representation given the fact that the contract contained a clause that said it was a "fully integrated, written agreements".[15]

Similarly, Texas courts find that merger provisions preclude reliance where the parties' agreement is the result of arms'-length negotiations and where there is no fiduciary or confidential relationship between the parties.[16] This Court has already found that the Purchase Agreement was negotiated by both parties;[17] additionally, as set forth more fully above, there is no fiduciary relationship between RBC and Debtors. Thus, whether interpreted under the laws of Texas or Louisiana, the merger clause forecloses reliance by Debtors.

Debtors' reliance on Louisiana Civil Code Article 2004 to avoid the application of the merger clause is, again, misplaced. The merger clause does not limit liability for "intentional or gross fault". Rather, it makes clear that all the parties' promises are set forth in the Agreement

---

[13] *Id*. at 1328.
[14] *Id.* at 1321; 1326.
[15] *Id*. at 1330.
[16] *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997).
[17] *Report and Recommendation to the District Court Regarding Civil Case No. 3:17-CV-02946-L* [Adv. Dkt. 134], pp. 15-20; *see also Order Accepting Report and Recommendation of the United States Bankruptcy Judge* [Adv. Dkt. 140].

and that neither party can rely on a promise that is not set forth in the Agreement.  The merger clause expressly negates claims based on promises not set forth in the Agreement.

RBC maintains that it made no misrepresentations outside of the Agreement. But assuming *arguendo* that RBC did make representations that conflict with the terms of the Purchase Agreement, Debtors would not be reasonably justified in relying on them in light of the clearly articulated merger provision contained in § 12.15 of the Purchase Agreement.

### E.    Debtors' Business Disparagement Claim Fails As A Matter Of Law.

Debtors' business disparagement claim is based on the alleged "false claim by Republic that the Debtors did not own their accounts receivable."[18] With respect to accounts receivable generated prior to November 5, 2015, the Court's previous summary judgment ruling makes clear that Debtors did not, in fact, own such accounts.[19] Because any statement by RBC that it owned pre-November 5, 2015 accounts was accurate, such a statement cannot be the basis of a business disparagement claim.[20] Accordingly, RBC is entitled to summary judgment on any alleged business disparagement claim premised on a statement regarding accounts created prior to November 5, 2015. To the extent that Debtors rely on statements made in court, such statements by RBC are protected by the well-established litigation privilege and, therefore, are not actionable.[21]

---

[18] Debtors' Fourth Amended Complaint, ¶ 153.

[19] Report and Recommendation [Adv. Dkt. 164], pp. 5; 8 ("Republic purchased all the Debtors' Accounts generated during the Term of the Agreements…the Agreements terminated on November 5, 2015 when the Debtors each ceased submitting Accounts to Republic").

[20] *See In re Lipsky,* 460 S.W.3d 579, 592 (Tex. 2015) (listing a false statement as an element of a claim for business disparagement).

[21] *See, e.g., Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942) ("Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel. The falsity of the statement or the malice of the utterer is immaterial, and the rule of nonliability prevails even though the statement was not relevant, pertinent and material to the issues involved in the case.")(internal citations omitted); *see also Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 992

### F.    Debtors Mischaracterize The Court's Declaratory Judgments.

For the convenience of the court, RBC has copied Debtors' chart setting forth Debtors'

interpretation of the rulings, and has added a column with the disposition that should be made of

the remaining issues.

| [Debtors'] Requested Declaration | Resolved by Court's Prior Ruling?[22] | RBC's Reply |
|---|---|---|
| ¶ 120(a) "Under the Factoring Agreement Republic contends was in effect, the Debtors did not sell and Republic did not purchase all of the Debtors' accounts into perpetuity." | Resolved in the Trustee's Favor. The Court held Republic did **not** purchase Debtors' accounts generated after November 5, 2015.[23] | Debtors mischaracterize the ruling. The court ruled *against* the Trustee and in *favor* of RBC when it held that, during the term of the Agreement Debtors sold all accounts receivable to RBC, not just those that Debtors listed on a schedule.<br><br>Furthermore, RBC never contended it purchased all of Debtors accounts into perpetuity. |
| ¶ 120(b) "Under the Factoring Agreement, the Debtors only assigned and Republic only came into possession of those accounts that the Debtor submitted to Republic on assignment schedules." | Partially Resolved. The Court held accounts generated on or before November 5, 2015 were purchased by Republic. Accounts generated after November 5, 2015 belong to the Debtors. | Resolved in favor of RBC. Debtors sought a declaration that Debtors only assigned accounts listed on assignment schedules. This Court disagreed and held that RBC purchased all accounts during the term of the agreement, even if Debtors did not list them on a schedule.[24] |

---

(5th Cir. 1999); *Melgarejo v. 24 Hour Prof'l Janitorial Services*, CIV A 307-CV-1847-B, 2008 WL 3342705, *2 (N.D. Tex. Aug. 7, 2008).

[22] This column is copied from Debtors' Response.

[23] *See* Adv. Dkt. 165, p. 8.

[24] *See* Adv. Dkt. 165, p. 5-6 "An Account's absence from an Assignment Schedule did not mean that the Debtors did not offer the Account for sale because the Agreements plainly contemplated that the Debtors offered to sell Republic all Accounts during the Term of the Agreements").

| [Debtors'] Requested Declaration | Resolved by Court's Prior Ruling?[22] | RBC's Reply |
|---|---|---|
| ¶ 120(d) "Republic did not legally control the accounts listed in Exhibit A nor the proceeds thereof." | *Partially Resolved.* Exhibit A includes accounts generated on, before, and after November 5, 2015.<br><br>Court held accounts generated on or before November 5, 2015 were purchased by Republic. Accounts generated after November 5, 2015 belong to the Debtors.<br><br>The Court later clarified that the statement above was "not intended to be a ruling that Republic can keep the entirety of the pre-November 5, 2015 Account proceeds in any final accounting between the parties under the Agreement." *See* Adv. Dkt. 208. | The Debtors mischaracterize the ruling. It was resolved completely—partially in Debtors' favor and partly in RBC's favor.<br><br>The "clarification" did not change the ruling on the merits. Rather, it was an acknowledgement that the court would not award the pre-November 5 account proceeds to RBC until after a full trial on the merits in case there is a setoff in Debtors' favor. |
| ¶ 120(e) "Republic collected the accounts listed in Exhibit A and is currently wrongfully withholding the proceeds thereof." | Partially Resolved. The Court held that the proceeds of accounts generated by the Debtors on or after November 5, 2015 are property of the estate that Republic must turn over to the Trustee. In its clarification, the court left open that even proceeds of pre-November 5, 2015 Accounts might wind up on the Debtors' side of the ledger in any final accounting. | The Debtors mischaracterize the ruling. It was resolved completely—partially in Debtors' favor and partly in RBC's favor.<br><br>The "clarification" did not change the ruling on the merits. Rather, it was an acknowledgement that the court would not award the pre-Nov 5 account proceeds to RBC until after a full trial on the merits in case there is a setoff in Debtors' favor. |

| [Debtors'] Requested Declaration | Resolved by Court's Prior Ruling?[22] | RBC's Reply |
|---|---|---|
| ¶ 120(f) "The proceeds of the accounts listed in Exhibit A are property of the Debtors' estates." | <u>Partially Resolved.</u> The Court held that the proceeds of accounts generated by the Debtors on or after November 5, 2015 are property of the estate that Republic must turn over to the Trustee. In its clarification, the court left open that even proceeds of pre-November 5, 2015 Accounts might wind up on the Debtors' side of the ledger in any final accounting. | The Debtors mischaracterize the ruling. It was resolved completely—partially in Debtors' favor and partly in RBC's favor.<br><br>The "clarification" did not change the ruling on the merits. Rather, it was an acknowledgement that the court would not award the pre-November 5 account proceeds to RBC until after a full trial on the merits in case there is a setoff in Debtors' favor. |
| ¶ 120(i) "The Factoring Agreement is null under La. Civ. Code Ann. Art. 2004 and La. Civ. Code Ann. Art. 2034." | <u>Not Resolved.</u> The Court denied the Trustee's motion for summary judgment, but it did not grant summary judgment in Republic's favor. Likewise, the Court did not rule on the applicability of Article 2004 to any particular provision of the factoring agreement. | When the Court found the pre-November 5 Accounts belong to RBC, the Court implicitly found the Agreement enforceable and was not "null". |
| ¶ 120(j) "The Factoring Agreement is unenforceable due to failure of consideration." | <u>Not Resolved.</u> The Court did not rule on this issue in its prior summary judgment Order. | RBC disagrees with Debtors' conclusion; When the Court found the pre-November 5 Accounts belong to RBC, the Court implicitly found the Agreement was enforceable. |

| [Debtors'] Requested Declaration | Resolved by Court's Prior Ruling?[22] | RBC's Reply |
|---|---|---|
| ¶ 120(o) "The Factoring Agreement is unenforceable due to fraud in the inducement and fraud during Republic's non-execution of the Factoring Agreement." | <u>Not Resolved.</u> The Court did not rule on this issue in its prior summary judgment Order | RBC disagrees with Debtors' conclusion; When the Court found the pre-November 5 Accounts belong to RBC, the Court implicitly found the Agreement was enforceable. |
| ¶ 120(p) "The Funds held by Republic or some portion thereof are property of the Debtors' bankruptcy estates." | <u>Partially Resolved.</u> The Court held that the proceeds of accounts generated by the Debtors on or after November 5, 2015 are property of the estate that Republic must turn over to the Trustee. In its clarification, the court left open that even proceeds of pre-November 5, 2015 Accounts might wind up on the Debtors' side of the ledger in any final accounting. | The Debtors mischaracterize the ruling. It was resolved completely—partially in Debtors' favor and partly in RBC's favor.<br><br>The "clarification" did not change the ruling on the merits. Rather, it was an acknowledgement that the court would not award the pre-November 5 account proceeds to RBC until after a full trial on the merits in case there is a setoff in Debtors' favor. |
| ¶ 120(q) "The Debtors' customers will not incur liability to Republic by paying the Debtors any outstanding or future accounts receivable." | <u>Partially Resolved.</u> The Court held accounts generated on or before November 5, 2015 were purchased by Republic. Accounts generated after November 5, 2015 belong to the Debtors | Debtors mischaracterize the ruling—the issue was fully resolved, partially in Debtors' favor and partially in RBC's favor. Debtors' customers for pre-Nov. 5 invoices would incur liability to RBC if they paid Debtors rather than RBC. |

**G.     At A Minimum, RBC Is Entitled to Summary Judgment To The Extent Debtors' Claims Are Based On Accounts Created Before November 5, 2015.**

It is undisputed that RBC owns all accounts generated before November 5, 2015.[25] At a minimum, this entitles RBC to partial summary judgment on Debtors' claims for conversion, liability under the Texas Theft Liability Act ("TTLA"), and tortious interference with existing contract/business relations to the extent that those claims are based on pre-November 5, 2015 accounts.

### i.     Conversion And Liability Under The Texas Theft Liability Act

Conversion requires the exercise of wrongful dominion or control.[26] Like a claim for conversion, liability under the TTLA requires a finding of unlawful appropriation of property with the intent to deprive the rightful owner of the property.[27]  Because this Court has already held that pre-November 5, 2015 accounts belong to RBC, RBC is, at a minimum, entitled to summary judgment on Debtors' claims for conversion or liability under the TTLA to the extent such claims are premised on pre-November 5, 2015 accounts.[28]

### ii.     Tortious Interference With Existing Contract/Business Relations.

It is not tortious interference to do what is allowed by contract.  Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference.[29] The terms of the Purchase Agreement authorized RBC to notify Debtors' customers – including

---

[25] *See supra* note 20.

[26] *See Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex. App.—El Paso 1993, no writ) (setting forth the elements of conversion).

[27] *See McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871 (Tex. App.—Dallas, 2014, pet. denied) (discussing elements of cause of action under TTLA).

[28] The Court's "clarification" was premised on Debtors argument that their alleged damages may be offset by the proceeds collected by RBC from pre-November 5 Accounts. *See Order on Trustee's Motion for Clarification* [Adv. Dkt. 208] ("The statements above are not intended to be a ruling that RBC can keep the entirety of the pre-November 5, 2015 Account proceeds in any final accounting between the parties under the Agreement.").

[29] *ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

Trelleborg – to remit payment directly to RBC.[30]   Therefore, at a minimum, RBC is entitled to partial summary judgment on Debtors' tortious interference claim insofar as those claims are based on RBC's conduct during the term of the Purchase Agreement i.e. pre-November 5, 2015.

## H.      Breach of Contract

With respect to making advances on Accounts, the Purchase Agreement unambiguously provides that it was within RBC's sole discretion to advance funds at a rate of up to 90% on *Eligible* Accounts.[31] Eligible Accounts is a defined term and not all accounts are "eligible".  For example, accounts over 90 days old and accounts that are disputed by the customer are not eligible.[32]   Debtors ignore these criteria.  Rather, Debtors assert, without any support in the Purchase Agreement and contrary to its terms, that RBC had to advance 90% on *every* account. The contract contains no such requirement; Debtors attempt to impose it through parole evidence. Under Texas and Louisiana law, parole evidence is inadmissible where the terms of a contractual provision are clear.[33] This is especially so where, as is the case here, the contract contains a merger clause that clearly states that the entirety of the parties' agreement is contained within the terms of the written agreement.[34]

Furthermore, Debtors have not identified any Eligible Account where RBC refused to make an advance.  Indeed, in their Response, Debtors failed to identify any specific provision in the Purchase Agreement that was allegedly breached by RBC.  Where Debtors fail to identify

---

[30] Purchase Agreement, ¶ 1.3.1, MSJ App. 87.
[31] Purchase Agreement, ¶ 2, MSJ App. 85.
[32] Purchase Agreement, Annex A, p. 1, Sec. C, MSJ App. 95.
[33] *Condrey v. SunTrust Bank of Georgia*, 429 F.3d 556, 563 (5th Cir. 2005) ("Louisiana law bars parol evidence to evaluate contractual intent '[w]hen the words of a contract are clear and explicit and lead to no absurd consequences.'")(citing La. Civ. Code Ann. art. 2046 (1987)); *Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*, 882 F.3d 574, 578 (5th Cir. 2018) "Parol evidence is not admissible under Texas law to render a contract ambiguous, which on its face, is capable of being given a definite certain legal meaning."
[34] *See* Purchase Agreement, §12.15, MSJ App. 94; *see supra* § II (D) (discussing effect of merger clause).

any provision in the contract that was breached and fail to identify any Eligible Account which RBC failed to fund, RBC is entitled to summary judgment on the breach of contract claim.

Finally, the Purchase Agreement authorizes RBC to maintain a Reserve for Obligations due and owing (including any future obligations that RBC reasonably anticipates are likely to occur, such as attorneys' fees).[35] So, RBC was entitled to withhold money as a reserve for the litigation that was obvious when Debtors refused to sign the release requested by RBC. Contrary to Debtors' assertion, RBC does not contend it can create a reserve after the Purchase Agreement terminates.  Rather, the right to maintain a reserve arose during the term of the Agreement and survives closing.[36]

### I.    Tortious Interference with Prospective Contract.

The Team Partners transaction was too speculative to be actionable. Buttles admission that there was less than a 50% likelihood of reaching an agreement with Team Partners is fatal to this claim.[37]

### J.    Interference with Debtors in BK

Debtors' Response does not include competent summary judgment that Debtors could have successfully reorganized with only advances from post Nov. 5 accounts receivable.  In addition, to the best of RBC's knowledge, there is no separate cause of action for "interference with debtors in bankruptcy" separate from any cause of action for a violation of the automatic stay; summary judgment should be granted accordingly.

---

[35] Purchase Agreement, ¶ 4, ¶ 10.4, MSJ App. 88 and 92; *see also* Purchase Agreement Definitions, p. 2, MSJ App. 96 (defining "Obligation").
[36] Purchase Agreement, ¶ 4, ¶ 8.3, MSJ App. 88 and 91.

K.      **Attorneys' fees are contractually barred.**

Debtors failed to cite any provision that would allow them to recover attorneys' fees. Furthermore, Debtors do not dispute that in Section 10.4 of the Purchase Agreement they waived their right to seek attorneys' fees from RBC.  In fact, in their Response, Debtors largely failed to address the waiver contained in Section 10.4.  The heading on page 41, Roman Numeral IV of the Response refers to "Trustees Attorneys' Fees" but, other than a short footnote, the substantive text below the heading only addresses Section 12.5 of the Purchase Agreement and consequential damages.  Attorneys' fees are not "damages" and Section 10.4 of the Purchase Agreement is not a limitation on liability for intentional or gross fault.  Therefore, RBC is entitled to summary judgment on Debtors' claim for attorney's fees.

L.      **Consequential Damages are contractually barred.**

Debtors do not dispute that Section 12.5 of the Purchase Agreement bars recovery of consequential damages if there is no "intentional or gross fault."  Here, for all the reasons set forth above, there is no competent summary judgment evidence of any intentional tort or "intentional or gross fault" by RBC. So, if there was an unintentional breach, for example by RBC not knowing the Purchase Agreement terminated on November 5, 2015, Debtors' recovery of consequential damages is barred.

Dated:  January 3, 2020                   Respectfully submitted,

                                          */s/ Richard A. Illmer*
                                          Richard A. Illmer
                                          State Bar No. 10388350
                                          Rick.Illmer@huschblackwell.com
                                          Alex E. Brakefield
                                          State Bar No. 24105523
                                          Alex.Brakefield&huschblackwell.com
                                          **HUSCH BLACKWELL LLP**
                                          1900 N. Pearl Street, Suite 1800
                                          Dallas, Texas 75201
                                          (214) 999-6100
                                          (214) 999-6170 (*facsimile*)

                                          Vickie L. Driver
                                          State Bar No. 24026886
                                          Vickie.Driver@crowedunlevy.com
                                          **CROWE & DUNLEVY, P.C.**
                                          1919 McKinney Ave #100,
                                          Dallas, Texas 75201
                                          (214) 420-2163
                                          (214) 736-1762 (*facsimile*)
                                          **COUNSEL FOR REPUBLIC BUSINESS CREDIT, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the parties receiving notice via the Court's electronic filing transmission and on counsel for the Chapter 7 Trustee and Buttles via email on January 3, 2020:

Jerry Kenneth Johnson, II
kjohnson@martinwaltonlaw.com
MARTIN WALTON LLP
1335 Space Park Drive, Suite C
Houston, Texas  77058
*Attorney for John Buttles*

Michael R. Rochelle
buzz.rochelle@romclaw.com
ROCHELLE MCCULLOUGH LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas  75201
*Attorney for John Buttles*

Jerry C. Alexander
alexanderj@passmanjones.com
Chris Robison
robisonc@passmanjones.com
PASSMAN & JONES, PC
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
*Attorney for Trustee James W. Cunningham*

Daniel J. Sherman
djsherman@syllp.com
SHERMAN & YAQUINTO
509 N. Montclair Avenue.
Dallas, Texas 75208-5498
*Attorney for Trustee James W. Cunningham*

Andrew Sommerman
asommerman@textrial.com
Sean McCaffity
smccaffity@textrial.com
SOMMERYMAN & QUESADA, L.L.P.
3811 Turtle Creek Boulevard, Suite 1400,
Dallas, Texas 75219
*Attorneys for Trustee James W. Cunningham*

*/s/ Richard A. Illmer*
Richard A. Illmer