Jerry Kenneth (J. Ken) Johnson II
State Bar No. 10746300
MARTIN | WALTON
699 S. Friendswood Drive, Suite 107
Houston, Texas 75201
(713) 773-2035 (office)

COUNSEL FOR JOHN S. BUTTLES

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **BAILEY TOOL &** | § | **Case No. 16-30503-SGJ-7** |
| **MANUFACTURING COMPANY.** | § | **Chapter 7** |
| Debtor. | § | |

| | | |
|---|---|---|
| | § | |
| | § | |
| **BAILEY TOOL &** | § | |
| **MANUFACTURING COMPANY, HUNT** | § | |
| **HINGES, INC. and CAFARELLI METALS, INC.,** | § | |
| Plaintiffs, | § | |
| **v.** | § | |
| | § | |
| **REPUBLIC BUSINESS CREDIT, LLC,** | § | **Adv. No. 16-03025-SGJ** |
| Defendant and Counter-Plaintiff, | § | |
| **v.** | § | |
| | § | |
| **BAILEY TOOL &** | § | |
| **MANUFACTURING COMPANY,** | § | |
| **HUNT HINGES, INC. and** | § | |
| **CAFARELLI METALS, INC.,** | § | |
| Counter-Defendant. | § | |
| | § | |
| **REPUBLIC BUSINESS CREDIT, LLC,** | § | |
| Third-Party Plaintiff, | § | |
| v. | § | |
| **JOHN BUTTLES, TENNECO, INC.,** | § | |
| **TRELLEBORG AUTOMOTIVE** | § | |
| **USA, INC.,** | § | |
| Third-Party Defendants. | § | |

---

**APPLICATION OF MARTIN | WALTON FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES UNDER TBCC § 27.01**

A HEARING WILL BE CONDUCTED ON THIS MATTER ON _____
_____, 2022 AT _____ __.M. IN THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT OF TEXAS, EARLE CABELL
BUILDING, UNITED STATES COURTHOUSE, 14TH FLOOR, 1100 COMMERCE
STREET, DALLAS, TEXAS 75242.

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN
WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS
PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST
FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT
BY FEBRUARY 7, 2022 WHICH IS AT LEAST TWENTY-FOUR (24) DAYS
FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST
SERVE A COPY OF YOUR RESPONSE ON COUNSEL FOR THE MOVING
PARTY; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS
UNOPPOSED AND GRANT THE RELIEF REQUESTED.

TO THE HONORABLE STACEY G. C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE:

MARTIN | WALTON ("MARTIN | WALTON" or the "Firm"), counsel for John S. Buttles,

makes its application (the "Application") for allowance of fees and reimbursement of expenses

incurred as counsel for John S. Buttles ("John Buttles" or "Buttles") in the above-styled Adversary

Proceeding. The Firm states as follows:

## JURISDICTION

1.      This Court has subject matter jurisdiction of this Application under 28 U.S.C. §

1334. Applicant seeks compensation authorized by Texas Business and Commerce Code Section

27.01.

## BACKGROUND

2.      On February 1, 2016 (the "Petition Date"), the above-styled Debtors filed their petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). [Dkt. 1]

3.      On February 19, 2016, the Debtors commenced this Adversary Proceeding against Defendant Republic Business Credit. ("Republic") [Adv. Dkt. 1] On March 23, 2016, Republic filed its cross-claim against Buttles. On March 23, Republic filed its answer. [Adv. Dkt. 19] On May 31, 2016, Republic filed its "counterclaim" (sic) against Buttles. [Adv. Dkt. 36]  On September 23, 2016, Buttles filed his answer and counterclaim against Republic. [Adv Dkt. 63]

4.      On January 26, 2017, the Court transferred the Debtors' cases to proceedings under chapter 7. [Dkt. 384] The United States Trustee appointed James Cunningham to serve as Chapter 7 Trustee (the "Trustee").

5.       This Adversary Proceeding was tried before the Court from June 14-18, June 21-22, and July 6, 2021. The Court issued its Findings of Fact and Conclusions of Law in this matter on December 23, 2021. This Application follows the Court's finding that John Buttles is entitled to an award of his attorneys' fees under Texas Business and Commerce Code Section 27.01.

## RETENTION AND COMPENSATION OF THE FIRM

6.      John Buttles was the equity owner of the Debtors Bailey Tool, Hunt Hinges, and Cafarelli Metals. After Republic Business Credit ("RBC") sued him, Buttles retained J. Ken Johnson ("Johnson") of MARTIN | WALTON on a contingent fee agreement.[1] A Court Clerk informed

---

[1] A copy of the Power of Attorney and Contingent Fee Agreement between John S. Buttles ("Client") and J. Ken Johnson, P.C. ("Attorney") can be provided if the Court wishes to review it. The

Johnson that local counsel was required since the Firm does not maintain an office in the Northern District. Buttles shortly thereafter approved the association of Rochelle McCullough LLP ("Rochelle McCullough") as co-counsel. As expected on a contingent representation, both firms have borne their own expenses and have received no compensation for their work thus far in this matter.

## SUMMARY OF FEES AND EXPENSES

7.      The Firm (Johnson) invested 2,168.4 hours from September 2017 to January 2022 to achieve the ordered recovery (Adv. Dkt. 369) for Buttles. A copy of Johnson's Fee and Work Summary is attached as **Exhibit A**. The exhibit reflects a chronological summary of the work done, time spent on the work tasks, applicable hourly rates, anticipated appellate fees allowed by statue, and voluntary reduction and fee calculation total of $1,348,165.00.

8.      While **Exhibit A** shows how the case unfolded from the start through trial, the following summary illustrates the case workup by task category:

| Activity | Hours | Fees |
|---|---|---|
| Legal Research, Case Analysis, and Drafting | 812 | |
| Discovery and Depositions | 576 | |
| Trial Preparation | 610 | |
| Court Time, Including Trial | 105 | |
| Administrative | 65 | |
| **Total Before Appellate Fees** | 2,168 | $1,348,165.00 |

---

agreement is a full contingent fee contract where no claim for fees or expense reimbursement is allowed unless and until a recovery is achieved for Buttles. The fee portion of agreement provides for a: (1) 20% fee before suit filed, (2) 30% after suit filed, (3) 40% after the start of discovery, or (4) 45% after notice of appeal or an appeal bond has been filed. The agreement likewise provides for reimbursement of case related expenses if there is a recovery.

| | | |
|---|---|---|
| Estimated Appellate Fees | 500 | $100,000.00 |
| **Total Before Voluntary Reduction** | 2,668 | $1,448,165.00 |
| Voluntary Reduction (10%) | (267) | ($144,816.00) |
| **Reduced Total** | 2,401 | $1,303,349.00 |

9.     During this adversary proceeding, Buttles minimized expenses by working jointly with the Trustee's counsel.  Of the costs chargeable to Buttles for this representation, those fronted by Johnson and MARTIN | WALTON total $32,242.74, are listed chronologically on **Exhibit B.**

10.     Johnson is the only member of MARTIN | WALTON that worked on this matter. His Lodestar fee rates for 2017 - 2022 are noted in the fee calculation on **Exhibit A** and are summarized as follows:

| Professional | Fee Year | Rates |
|---|---|---|
| J. Ken Johnson | 2017-2018 | $600/hr. |
| | 2019-2020 | $625/hr. |
| | 2021-2022 | $650/hr. |

11.     As noted in paragraphs 9-12, **Exhibit A** summarizes in a straightforward manner the work performed, the resulting fee calculation, and expenses for which reimbursement is sought. MARTIN | WALTON'S (Johnson) billing and expenses are also summarized on the attached APPENDIX B - FEE APPLICATION COVER SHEET, which is also incorporated herewith by reference. If the Court has questions or concerns regarding either document, the Firm/Johnson will gladly and promptly respond as directed.

12.     When the Trustee's new litigation counsel approached Johnson in fall 2017, this was supposed to be a simple matter that would be concluded in 90-120 days. It quickly became a challenging and highly disputed, bet the company case. Early due diligence efforts showed highly questionable conduct by RBC and a basis for countersuing RBC. The facts of that unconscionable conduct are set out in the Court's Findings of Fact and Conclusions of Law recently issued in this Adversary Proceeding (Adv. Dkt. 369). Applicant incorporates those findings here by reference. In its opinion, this Court found that under the provisions of Texas Business and Commerce Code § 27.01, Buttles was entitled to be awarded his attorneys' fees. Therefore, this fee application is submitted pursuant to statute and not under the provisions of 11 U.S.C. § 330, as is typically the case.

13.     Were this a typical Section 330 fee application, the time spent in a single adversary proceeding would appear under one heading. However, this Application covers over four years of work, so Applicant has divided the time invested in the case into subparts to assist the Court in evaluating the Application. The paragraphs below outline the work performed by Johnson during this Adversary Proceeding.

14.     <u>Legal Research, Case Analysis, and Drafting</u>. Case analysis and legal research were a focal point from the start of the engagement through this Application's filing. In complex multi-party business disputes, substantial effort is required to figure out what went wrong, who is responsible, and what can be done about it. In this matter, it was particularly challenging to make sense of the extensive undifferentiated mound of complex agreements, financial information, treasure trove of emails, and prospective witnesses. Buttles counsel worked closely on case analysis.

In most instances, Rochelle McCullough did the initial legal research and drafting, then revised and edited with Johnson. Rochelle and Johnson worked from a clean sheet of paper on many projects, especially when the deadline was imminent. The Buttles team also worked closely with the Trustee's litigation counsel to cover all bases and maximize the chance for recovery on the destruction of Buttles business and his individual damages. The widespread adoption of videoconferencing and screen-sharing software saved considerable time and expense over the last two years of the case. Aligned counsel were able to meet, draft, edit, attend depositions and hearings without travel.  The fees in this area also included the time spent drafting the fee application, which took more time than typically needed in this Court, since complying with the requirements of TBCC § 27.01 required a careful checking of the case law and statutory requirements. **Johnson spent approximately 812 hours in this area during the case**.

15. <u>Discovery and Depositions</u>. Written and deposition discovery in this matter was extensive. Johnson was responsible for taking the lead at depositions (usually supported by Mr. Rochelle), preparing witnesses, and leading written discovery and response efforts. Johnson worked closely with Rochelle McCullough and Trustee's counsel to plan and effectively conduct written discovery and depositions. **Johnson spent approximately 576 hours in this area during the case**.

16. <u>Trial Preparation</u>. Trial preparation started when the pleadings were amended and discovery started. As the Court noted in its opinion, the exhibits in the record numbered in the thousands, and multiple witnesses testified. Buttles asserted several causes of action against RBC, and the firms (primarily Johnson and Rochelle) worked closely in building the "liability outlines"

needed for discovery and the trial presentation. Likewise, Johnson and Rochelle worked closely with the Trustee's counsel to plan the trial presentation. Mr. Rochelle did an exceptional job in getting and keeping everything organized leading up to and during the trial. **Johnson spent approximately 610 hours in this area during the case**.

17. <u>Court Time, Including Trial</u>. There was considerable motion practice in this case. Defendant brought motions to dismiss, change venue, prevent a jury trial, and summary judgment, among others. Each of those motions was important for keeping Buttles' and the Trustee's lawsuits moving forward. The trial lasted seven days, with the final argument postponed for two weeks. The month before and the week after the trial was intense and required almost every waking hour. **Exhibit A** reflects the work needed to prosecute the case properly. **Johnson spent approximately 105 hours in this area during the case**.

18. <u>Administrative</u>. Keeping a complex, multi-party case moving over multiple years is an organizational challenge. Scheduling, calendaring activities and deadlines, and communicating with counsel, witnesses, experts, vendors, and the court required attention to detail and a high degree of care. **Johnson and the Firm spent approximately 65 hours in this area during the case**

19. <u>Fees on Appeal</u>. Texas law provides that the Court may prospectively allow for fees incurred if an appeal is taken from its judgment. After consulting with appellate counsel, the Firm estimates that its portion of appellate fees and costs will be $100,000.00.

## EVALUATION STANDARDS

20.     A careful assessment of the fees requested by this Application requires state and federal law analysis.

21.      "'State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision'…[b]ecause Texas substantive law applies to the statutory-fraud claim [Tex. Bus. & Com. Code § 27.01(e)] on which the award of attorney's fees was based, Texas law also governs the award of attorney's fees and reasonableness of that fee award in this case." *Gassaway v. TMGN 121, LLC*, No. 5:19-CV-082-H, 2020 U.S. Dist. LEXIS 26846, at *16 (N.D. Tex. Feb. 18, 2020), quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

22.     "When fee-shifting is authorized, whether by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019). Texas has embraced the well-known "lodestar method," which mandates a two-step analysis in this regard:

> [T]he lodestar method…applies for determining the reasonableness and necessity of attorney's fees in a fee-shifting situation: 'Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps. First, the [fact finder] must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The [fact finder] then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The [fact finder] may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.'

*Id*. at 501 (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762-63 (Tex. 2012)).

24.     In *Rohrmoos*, the Texas Supreme Court emphasized that "the fee claimant bears the

burden of providing sufficient evidence on both counts [the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work]." *Id.* at 498 (citing *El Apple*, 370 S.W. 3d at 760). Sufficient evidence includes, "at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 501-02.

23.    The Lodestar Method developed as a "short-hand version of the *Arthur Andersen* factors," encompassing the most commonly applied considerations in fee analysis. *Id*. at 490. The "*Arthur Andersen* factors" include:

> (i) Time and labor required;
> (ii) Novelty and difficulty of the questions involved;
> (iii) Skill required to perform the legal services properly;
> (ii) Preclusion of other employment;
> (iii) Fee customarily charged in the region for similar legal services;
> (iv) Amount involved and results obtained;
> (v) Time limitations imposed;
> (vi) Nature and length of the professional relationship with the client;
> (vii) Experience, reputation, and ability of the attorneys rendering services; and
> (viii) Whether the fee is fixed or contingent.

*See Arthur Andersen v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citing Tex. Disciplinary R. Prof. Conduct 1.04); *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (requiring application of these factors in a case under Declaratory Judgments Act).[2] While these factors are to be considered, litigants are not required to present evidence on each factor. *City of Laredo v. Negrete*, No. 04-08-00737-CV, 2010 Tex. App. LEXIS 903, at *28 (Tex. App.—San Antonio Feb. 10, 2010, pet. denied) (*citing Burnside Air Conditioning & Heating, Inc. v. T. S. Young Corp.*, 113 S.W.3d 889, 897-98 (Tex. App.—Dallas 2003, no pet.)).

---

[2] These considerations are subsumed by the "Johnson Factors" adopted by the Fifth Circuit and discussed below.

24.     The base Lodestar Method calculation is presumed to account for most of the relevant *Arthur Andersen* considerations. *See Rohrmoos,* 578 S.W.3d at 500 ("As in the federal courts, the base lodestar calculation usually includes at least the following considerations from Arthur Andersen: "the time and labor required," "the novelty and difficulty of the questions involved," "the skill required to perform the legal services properly," "the fee customarily charged in the locality for similar legal services," "the amount involved," "the experience, reputation and ability of the lawyer or lawyers performing the services," "whether the fee is fixed or contingent on results obtained," "the uncertainty of collection before the legal services have been rendered," and "results obtained." (citing *Arthur Andersen,* 945 S.W. 2d at 818).

25.     In the second step of the Lodestar analysis, after determining the base fee or Lodestar, the fact finder may then adjust the base lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. Considerations may not be used to enhance or reduce the base calculation to the extent they are already reflected in the reasonable hours worked and reasonable hourly rate. *Id.* at 501.

26.     While state law is controlling, analysis under Fifth Circuit precedent is also helpful for analyzing the fees requested here. Like the Texas Supreme Court in *Arthur Andersen*, the Fifth Circuit has previously ruled that many factors shall be considered in determining the allowance of compensation. *See, e.g., In re First Colonial Corp. of America*, 544 F. 2d 1291 (5th Cir.), cert. denied, 431 U.S. 904 (1977); *Johnson v. Georgia Highway Express, Inc.,* 488 F. 2d 714 (5th Cir. 1974); See also In re Drexel Burnham Lambert Group, Inc.*, 131 B.R. 13 (Bankr. S.D.N.Y. 1991); *In re Hutter Construction Co., Inc.*, 126 B.R. 1005 (Bankr. E.D. Wis. 1991); *See also In re Nine*

*Associates, Inc.,* 76 B.R. 943 (S.D.N.Y. 1987); *In re Cuisine Magazine, Inc.*, 61 B.R. 210 (Bankr. S.D.N.Y. 1986). As noted by the Fifth Circuit, "the guidelines we [establish] are useful whenever the award of reasonable attorney's fees is authorized by statute." *First Colonial*, 544 F. 2d at 1298-1299.

27.     Time and labor devoted is only one of many factors to be considered. According to the Bankruptcy Code and Fifth Circuit standards, the number of hours expended must be considered in light of all relevant factors, including (i) the amounts involved and the results achieved to date; (ii) the novelty and difficulty of the questions presented; (iii) the skill requisite to properly perform the legal services; (iv) the preclusion of other employment; (v) the customary fee to a private client for the services rendered; (vi) whether the fee is fixed or contingent; (vii) awards in similar cases; (viii) time constraints required by the exigencies of the case, including the frequency and amount of time required to be devoted other than during regular business hours; (ix) the experience, reputation and ability of the attorneys rendering services; and (x) "undesirability" of the case; and (xii) the nature and length of the professional relationship with the client (the "Johnson Factors"). *See* 11 U.S.C. § 330(a)(3); *Johnson v. Georgia Highway Express*, 488 F. 2d at 717-19 and *In re First Colonial Corp. of America*, 544 F. 2d at 1294, which makes these factors applicable in bankruptcy cases.[3]

---

[3]. The Firm recognizes that under settled law the "lodestar method," as first developed by the Third Circuit, *see Lindy Bros.Builders Inc. v. American Radiator and Standard Sanitary Corp.*, 487 F. 2d 161 (3d Cir. 1973), as opposed to the Johnson Factors, as set forth above, is the proper method to be used to determine a reasonable fee in all federal courts, including bankruptcy courts. *See, e.g., Pennsylvania v. Delaware Valley Citizens Council for Clean* Air, 483 U.S. 711 (1987) *("Delaware Valley II"); Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 346 (1986) ("*Delaware Valley I*"); *United States Football League v. National Football League*, 887 F. 2d 408, 413 (2d Cir. 1989), cert. denied, 110 S. Ct. 1116 (1990); *In re Cena's Fine Furniture, Inc*., 109 B.R. 575 (E.D.N.Y. 1990).

28.     As outlined by the Texas Supreme Court and Fifth Circuit, applying the above criteria more than justifies the compensation requested. A brief statement about each of the elements is provided below:

a.     <u>The time and labor required</u>:  As previously noted, Johnson thus far has expended a total of 2,168.4 hours representing Mr. Buttles. In addition, state law contemplates allowance of fees on appeal as part of an award of statutory attorneys' fees. After inquiry, the Firm estimates that it will expend 200 hours on such appeals at a blended hourly rate of $500/hr. At its standard hourly rates, the Firm has incurred fees to date totaling $1,348,165.00; appellate fees would add another $100,000 to that amount. A detailed description of the services rendered in the application is attached as **Exhibit "A."**

<u>What was Necessary to Prove the Compensable Claim</u>. At the outset, the Firm acknowledges that it provided legal services supporting both compensable and non-compensable claims in this case. The "American rule," followed by Texas courts, provides that a party may not recover for attorney's fees unless specifically authorized by statute or contract. *See, e.g., Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*, 532 U.S. 598, 602, (2001) ("In the United States, parties are ordinarily required to bear their own attorney's fees-the prevailing party is not entitled to collect from the loser. Under this 'American Rule,'" we follow "a general practice of not awarding fees to a prevailing party absent explicit statutory authority.") (internal citations omitted). As such, when attorney's fees are authorized for some, but not all, of

---

However, the Supreme Court has made it clear that the "lodestar method" is presumed to subsume the Johnson Factors. *Delaware Valley I*, 478 U.S. at 563; *Cena's Fine Furniture*, 109 B.R. at 581.

a prevailing party's claims, that party generally has a duty to segregate the recoverable attorney's fees from the unrecoverable. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006); *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991). Nonetheless, the Texas Supreme Court has recognized an exception where the legal services provided advance *both* non-recoverable and fee-recoverable claims. The critical question is whether the particular services would have been necessary even if the non-recoverable claims were not appended to the recoverable claims. *Tony Gullo Motors I, L.*P., 212 S.W.3d at 313-314. Where discrete legal services advance both, the services are considered so *intertwined* that they need not be segregated. *Id.*

As set out by the Texas Supreme Court in the *Tony Gullo Motors* decision, the issue is not simply that facts were intertwined, but whether the work done was necessary to prove the statutorily compensable claim. In this instance, the Firm believes that all but a few of the hours worked were necessary to prove Buttles had been defrauded in a real estate transaction. The extensive analysis of the facts had to be done whether for all asserted causes of action[4] or only the fraud in a real estate count. There would have been minimal-time savings in not briefing, documenting, and structuring proof of the other counts.[5] However, the facts and exhibits probative of the other counts were the same ones proving RBC's liability under TBCC Section 27.01. Further, the Section 27.01 fraud pleaded and proved by Buttles was not a simple undertaking. The evidence at trial

---

[4] The other causes of action asserted include common law fraud (Count 1), tortious interference with prospective and existing contract (Count 4), breach of contract (Count 5), negligent misrepresentation (Count 6), accounting (Count 7), objection to claim (Count 8), exemplary damages (Count 9), and attorneys' fees, expenses, and costs of court (Count 10).

[5] First, the uncertainty of going to trial unprepared on those claims was not a risk counsel could take. Second, Applicant can only estimate the non-compensable time involved because Johnson did not separate his time by cause of action. Third, Applicant estimates less than 150 hours was specifically dedicated to this work.

showed that RBC's fraudulent treatment of Buttles began at the inception of the relationship, well before it demanded a lien on his homestead, and continued until long after RBC took homestead proceeds and gave nothing in return.

b.    <u>The novelty and difficulty of questions</u>: While the core issue on Mr. Buttles' side of the case – invalidating a lien securing a business debt being placed on the homestead – is not a novel matter, obtaining an appropriate judgment for the damage caused by RBC's fraudulent actions proved both novel and complex and required a tenacious, four-year commitment by his counsel. RBC was committed to avoiding accountability and used many procedural devices to delay matters. Likewise, while RBC vigorously pursued its claims against Buttles, it also tested his counterclaims against RBC, including motions to dismiss, transfer venue, compel discovery, strike/limit expert witnesses, and summary judgment of those counterclaims. These motions individually took months and collectively years to resolve but gained RBC no significant relief.

Setting aside RBC's "grind Buttles to dust" strategy, counsel's challenge was reconstructing what happened between Buttles and RBC. The story Buttles recounted regarding the RBC relationship portrayed a lender acting so maliciously that it was hard to fathom. The extreme nature of the story made it critical to scrutinize the written record with extreme diligence to determine if Buttles' story was credible. Two sets of documents were identified as essential for proving the case: (1) emails the parties had exchanged and (2) RBC's factoring agreement and guaranty. Each set brought challenges in analyzing and developing the case.

<u>The Emails</u>. Thousands of emails were exchanged by the parties. Johnson worked with Buttles initially to identify and timeline critical communications. As RBC began to make its

production of communications, Buttles counsel worked to unravel the jumble of data and organize it, along with Bailey Tools/Buttles communications in chronological order. Once read, highlighted, and duplicates removed, the essential points to proving the case were entered on a timeline. That timeline was 40 pages long and ultimately included Bailey Tools/Buttles key exhibits. The story of how RBC first duped Buttles and his company into entering the factoring agreement, and then it stripped Bailey and Buttles of their assets began to emerge as the timeline was built. Doing this work was time-consuming, complex, and essential to proving the fraud case against RBC. As demonstrated by the Court's opinion, extracting the story from the email string was not only necessary, it also formed the core of the Court's findings in this case.

The Contracts. RBC's factoring agreement and guaranty were also key documents in the case. The originals appear to be in nine-point type, single-spaced. The documents were not written with clarity and were a combobulation of definitions, qualifications, disclaimers, and duties imposed on the borrower. No first, second, third, or fourth reading left counsel with a clear understanding. Indeed, at times it was necessary to diagram sentences before their meaning emerged. RBC's standard form agreements gave it not merely the upper hand but a shocking amount of freedom and power. However, as the Court's opinion noted, RBC managed to step outside even its own broad contractual protections. (Dkt. 369, p. 101-116)

Making Sense of the Jumble. As the document review continued, counsel came to see this as a "lender liability" case. After working through the large volume of evidence, counsel took on the novel and uphill challenge of proving that a lender had acted fraudulently. The Court's opinion signaled that the effort was a resounding success. RBC was oblivious to or disregarded the lessons

*Farah* taught the financial community over 37 years ago. See, *State National Bank of El Paso v. Farah Manufacturing Co*., 678 S.W.2d 661 (Tex. App. 1984).

c. <u>Skill requisite to perform services properly</u>: Johnson has over 25 years of experience in high-stakes commercial litigation. He has worked with Rochelle McCollough and the Trustee's counsel on several large, complex, multi-party bankruptcy trustee engagements that have recovered more than $100 million. Given the contingent nature of the employment, the aligned firms' history of working together, all counsel worked diligently to develop the case efficiently, effectively and to win at trial.

d. <u>The preclusion of other employment</u>: Except for final trial preparation, the time demands were not so extensive as to preclude other employment by Johnson or MARTIN | WALTON. However, this case's time demands and delay hindered Johnson from advancing other matters to resolution.

e. <u>Customary fees</u>: The rates charged by Johnson were his customary charges for work of this nature during 2017-2022. According to the best information available to Buttle's designated attorneys' fees expert, the rates sought for approval here are generally below those sought in comparably sized cases, both in this district and around the country, from counsel of similar experience.

f. <u>Whether the fee is fixed or contingent</u>: Johnson accepted this case on contingency after preliminarily concluding that significant wrong had been done to Buttles. A part of that decision was that the facts and statutes involved created the possibility for an award of statutory

attorneys' fees, a significant damage award for the destruction of Buttles business, and a $2 million exposure to Comerica bank triggered by RBC's mistreatment of Buttles.

### (i) Statutory fee award may exceed the sum owed on a contingency agreement.

When determining the amount of attorney's fees to be awarded, the Court may consider the contingency fee agreement between the Firm and Mr. Buttles; however, such agreement is not controlling. Instead, the award must be based on the evidence of a reasonable fee for services rendered. Recognizing this, Texas courts have held that the award may be more or less than what the attorney's fees would have been under the contingency agreement between the parties. *See U.S.A. Precision Machining Co. v. Marshall*, 95 S.W.3d 407, 412–413 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) *(upholding award that was more than what fees would have been under the agreement).*

### (ii) Statutory fee awards may greatly exceed the amount of actual damages.

Texas courts have held that an award may be reasonable even if the attorney's fees greatly exceed the actual damages. *See Metroplex Mailing Servs. v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 900–901 (Tex. App.—Dallas 2013, no pet.); *Bundren v. Holly Oaks Townhomes Ass'n*, 347 S.W.3d 421, 441 (Tex. App.—Dallas 2011, pet. denied) ("[T]here is no rule that **fees** cannot be more than actual damages"). In one instance, citing the complexity of the case and the amount of work involved, the Corpus Christi Court of Appeals determined a jury award of $2.9 million to be reasonable, even though actual damages were only $584,517.26. *See Rio Grande Valley Gas v. City of Edinburg*, 59 S.W.3d 199, 224 (Tex. App.—Corpus Christi 2000, *rev'd on other grounds sub nom.*) In so holding, the appeals court expressly noted the complex nature of the case and the

extraordinary work involved in preparing and trying it, including a clerk's record of over 8,000 pages, a seven-week trial, and the employment of 33 lawyers from 10 different law firms. *Id.*; *see also Stuckey v. White*, 647 S.W.2d 35, 38–39 (Tex. App.—Houston [1st Dist.] 1982, no writ) (award of $33,000 plus $5,000 for each appeal was not excessive, when damage recovery was $14,339, due to complexity of the case, number of hours expended, and reasonableness of hourly fee)].

Buttles counsel believes the evidence demonstrates that a fee larger than the amount owed under the contingency agreement is more than justified. Achieving an award of attorneys' fees required proving that RBC extracted an improper lien on Buttles' homestead and that RBC obtained that lien through fraud. Claiming that RBC misled Buttles into giving it a lien on his homestead was one thing; showing that RBC's fraud permeated the relationship to the point of malice raised the bar much higher. As the Court's opinion demonstrates, counsel met that higher standard.

g. <u>Time limitations</u>: Other than during trial preparation and the trial itself, the time limitations here were generally consistent with those involved in high-stakes litigation involving a recalcitrant and well-funded defendant. There were often not enough hours in the day to do what was needed at the time, but that is not unusual with this type of litigation.

h. <u>Amounts involved and results obtained</u>: This litigation involved the destruction of an established manufacturing business and its owner's career, along with the malicious taking of the owner's exempt property, all intertwined by RBC's consistently fraudulent conduct. The court found $16.96 million in damages to the estate and $1.16 million in damages to Buttles

individually. These amounts reflect that the Court accepted the upper end of plaintiffs' valuation and damage testimony. In Applicant's experience, such success in proving a hotly disputed case is rare.

### (i) The work of Buttles' counsel made the Trustee's work less burdensome.

Buttles counsel would also note that its work obtained results not only for John Buttles but also assisted the Trustee in his recovery. For example, when counsel examined and marked up thousands of emails in the case, they shared that work with the Trustee, whose counsel did not have to repeat the process. The material shared included not merely the chronologically organized emails but also extensive commentary, on a by-email basis, on their significance and relation to claims made both by Buttles and the Trustee. In the same way, the Firm shared its timeline and proof charts with the Trustee. While there was not a complete overlap of facts and exhibits, Buttles counsel nonetheless believes that its sharing saved Trustee's counsel many hours of work and allowed them to focus their efforts on other areas.

### (ii) A fee award larger than the damages is entirely appropriate here.

The Firm would be remiss if it failed to acknowledge what may be considered the "elephant in the room," namely, that the fee award requested exceeds the amount of damages awarded to Buttles. However, as discussed above in paragraph 26. f (i) and (ii), statutory fees that exceed the amount of a recovery, or what would otherwise be owed under a contingency contract, are appropriate and acceptable under the circumstances here.

### (iii) Buttles' counsel advanced proof necessary for Buttles to recover the value of his equity interest

<u>Much of the Estate's Award should go to Buttles</u>. Further, while the Trustee's damage claims belong to the estate, the $16.9 million in damages awarded to Trustee Cunningham far outstrip the amount of allowed claims in the case. Accordingly, Buttles' equity interest, at least on paper, would be entitled to a distribution in the range of  $10 million.[6] Buttles counsel believes that their work significantly contributed to that result. If this were a case under chapter 9 or chapter 11, the Firm would be seeking a fee award for "substantial contribution" to the case's success under 11 U.S.C. § 503 (b)(3)(D).[7] In this case, Buttles counsel refers to the statutory provision as a helpful parallel and support to justify the award in an amount greater than the damages awarded. As such, Buttles counsel believe the fees requested are reasonable and appropriate even though they exceed the damage amount awarded for fraud on the real estate claim.

---

[6] As this Application was being drafted, the Firm received the Trustee's motion to compromise controversy. [Adv. Dkt. 594] In that motion, counsel understands that the Trustee wants to make a cash settlement with RBC representatives which will be insufficient to pay more than a 50% dividend to general unsecured creditors. This settlement therefore deprives Mr. Buttles of any recovery for his equity interest.

[7] Some Circuits have construed the statute to extend to chapter 7. See, e.g. *Mediofactoring v. McDermott (In re Connolly N. Am., LLC),* 802 F.3d 810, 816–17 (6th Cir. 2015*)* (over dissent, noting that section 102(3) "encourages an expansive reading of § 503(b)," and even the specific mention of chapters 9 and 11 in the statute does not necessarily preclude its application in chapter 7); *In re S & Y Enters.,* 480 B.R. 452, 461 (Bankr. E.D.N.Y. 2012*)* (although ultimately denying the claim, the court found that noncreditor unsuccessful bidder had standing to assert a substantial contribution claim concluding that "section 503(b)'s enumeration of prospective applicants for a substantial contribution administrative expense is illustrative, not exclusive"), *aff'd,* 2013 U.S. Dist. LEXIS 125965 (E.D.N.Y. Sept. 3, 2013); *In re Zedda,* 169 B.R. 605, 607 *(*Bankr. E.D. La. 1994*)* (allowing substantial contribution fees in a chapter 7 case, citing cases coming out both ways).  Other circuits have determined that the specific statutory language, which includes only chapters 9 and 11, cannot be expanded. *See, e.g.*, In re Nilhan Developers, LLC., 620 B.R. 385, 406–10 (Bankr. N.D. Ga. 2020) (insider who was not a creditor or equity security holder lacked standing to assert a substantial contribution claim under section 503(b)(3)(D)); *In re Mountain Creek Resort, Inc.*, 616 B.R. 45 (Bankr. D.N.J. 2020) (denying substantial contribution claim by county because the county was not a creditor and lacked statutory standing under section 503(b)(3)(D)); *In re First Baldwin Bancshares, Inc.*, 2013 Bankr. LEXIS 2200 (Bankr. S.D. Ala. May 30, 2013); *In re Engler,* 70 C.B.C.2d 781, 500 B.R. 163, 174 (Bankr. M.D. Fla. 2013) (while recognizing that the list of administrative expenses is not limiting, the specifics of subsection 503(b)(3) overcome the general), appeal dismissed, 2014 U.S. Dist. LEXIS 38412 (M.D. Fla. Mar. 24, 2014); *In re Watson,* 495 B.R. 88, 93 (Bankr. D. Colo. 2013) (reference to chapters 9 and 11 in the statute preclude its application to chapter 7).

i. <u>The experience, reputation, and abilities of the attorneys</u>: Applicant Johnson has practiced law in Texas for over 30 years in both state and federal courts and several other states handling complex, multi-party litigation and arbitration cases. In addition to extensive trial experience, he has also been an officer of several charitable endeavors, including serving on the Board of Directors of South Texas College of Law Houston for 20 years and as Chairman for the past seven. As mentioned in section c above, counsel representing Buttles and the Trustee have worked together over many years on several significant contingent bankruptcy matters and achieved outstanding results. The case law standard requires reference to counsel's reputation; I can say from experience that Mr. Rochelle and the Trustee's counsel are highly experienced and capable attorneys and are men of the highest character.

j. <u>Undesirability of the case</u>: Defendants viewed this case as a no liability, no damages case until the Findings of Fact and Conclusions of Law were announced on December 23, 2021. (Adv. Dkt. 369)  Defendants believed they could treat Buttles any way they wanted, and there would be no adverse consequence because of their bulletproof contract. RBC's ruthless conduct destroyed Buttles business, ruined his personal finances, and effectively took his homestead. As anticipated, RBC was a well-funded company that used all available means to avoid liability. Additionally, the vagaries of judicial assignment rendered this case effectively an orphan for most of its existence, further adding to delay. As a result, Johnson was required to spend far more time on the case than was initially projected. The case reduced his ability and opportunity to generate income from other matters for 2-3 years.

k. <u>The nature and length of the professional relationship with the client</u>: Applicant did not represent Buttles before this matter arose and does not anticipate that he will remain a client after it concludes.

l. <u>Awards in similar cases</u>: This Court hears fee applications regularly, and it is familiar with the range of fees charged in litigation such as this. Applicant understands the compensation sought is consistent with or below fees being awarded in other cases of similar size in this or other districts across the nation.

## COSTS

29. During the Application Period, the Firm incurred actual disbursements on Buttles behalf of $32,242.74.

30. Concerning in-house photocopying charges, the Firm's general policy is to charge its clients the rate of 20¢ per page. These charges are intended to cover the Firm's costs for the services; the Firm does not believe that the charges constitute a profit. However, the Firm typically sends large copying and mailing work to outside services which charge less than the Firm charges, thereby realizing savings for the estate. Only clients who use photocopying, facsimile, and other office services of the types outlined in the Application's cover sheet are separately charged for such service.

31. To the best of the Firm's knowledge, all expenses sought to be allowed and reimbursed comply with the U.S. Trustee's Guidelines.

32. Because the Firm files this fee application under the Texas Business and Commerce Code and is not subject to the requirements of the federal Bankruptcy Code, it states that the

requirements of 11 U.S.C. § 504 and Fed R.Bankr.P. 2016(a) are inapplicable. Applicants do not seek payment from the Debtor's estate.

33.     No agreement or understanding prohibited by Section 155 of Title 18, United States Code has been or will be made by the Firm.

WHEREFORE, premises considered, the Firm respectfully requests this Court to grant allowance of compensation for professional services rendered as counsel for John Buttles in the amount of $1,303,349.00, and reimbursement of actual and necessary disbursements incurred by the Firm in the amount of $32,242.74, .and for such other and further relief as this Court deems just and proper.

Dated: January 13, 2022.

Respectfully submitted,

_/s/ Ken Johnson_
Jerry Kenneth (J. Ken) Johnson II
State Bar No. 10746300
MARTIN |WALTON
699 S. Friendswood Drive, Suite 107
Houston, Texas 75201
(713) 773-2035 (office)
(713) 907-8325 (cell)
kjohnson@martinwaltonlaw.com

COUNSEL FOR JOHN S. BUTTLES

## STATEMENT OF CERTIFYING PROFESSIONAL

The undersigned hereby certifies that he has prepared the foregoing Application for Allowance of Compensation and Reimbursement of Expenses. Although he is not seeking reimbursement from the Debtors' estates, and therefore does not believe that the Application is subject to the provisions governing such fee requests, he nonetheless certifies that, to the best of his

knowledge, information and belief, formed after reasonable inquiry, the compensation and expense reimbursement sought is (a) in conformity with the Guidelines for Compensation and Expense Reimbursement of Professionals for the United States Bankruptcy Court, Northern District of Texas, effective February 1, 1994, and (b) are billed at rates, in accordance with practices, no less favorable than those customarily employed by MARTIN |WALTON in similar matters and generally accepted by MARTIN |WALTON clients.

_/s/ J. Ken Johnson_

Jerry Kenneth (J. Ken) Johnson II

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was served via ECF on all parties registered to receive service via the ECF system and upon the parties listed on the attached service list by First Class United States Mail postage prepaid, this 13th day of January 2022.

_/s/ J. Ken Johnson_

Jerry Kenneth (J. Ken) Johnson II